[No. H031175. Sixth Dist. Dec. 19, 2007.]

MERCURY INTERACTIVE CORPORATION, Plaintiff and Appellant, v.
KENNETH KLEIN et al., Defendants and Appellants;
THE RECORDER et al., Movants and Respondents.

**COUNSEL**

Heller Ehrman, Sara Beth Brody and Norman J. Blears for Plaintiff and Appellant.

Wilson Sonsini Goodrich & Rosati, Cheryl W. Foung, Jared Kopel, Thomas Martin, Christina Costley and Jacob T. Veltman for Defendant and Appellant Kenneth Klein.

Orrick Herrington & Sutcliffe, M. Todd Scott, James N. Kramer and Sylvia E. Cedial for Defendant and Appellant Susan Skaer.

Farella Braun & Martel, C. Brandon Wisoff, Douglas R. Young and James C. Mann for Defendant and Appellant Sharlene Abrams.

Levy Ram & Olson and Karl Olson for Movants and Respondents.

**OPINION**

**DUFFY, J.**—Eight years ago, our Supreme Court held that the right of public access to court proceedings under the First Amendment of the United States Constitution applied to civil as well as criminal proceedings. (See *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178 [86 Cal.Rptr.2d 778, 980 P.2d 337] (*NBC Subsidiary*).) Chief Justice George, writing for a unanimous court, addressed the propriety of excluding the public and press from certain trial proceedings in a civil suit involving prominent entertainment figures and concluded "that, in general, the First Amendment provides a right of access to ordinary civil trials and proceedings . . . ." (*Id.* at p. 1212.) The court also made the point in a footnote that courts have generally held that there is "a First Amendment right of access to civil litigation documents filed in court as a basis for adjudication. . . . [¶] . . .

[but] that the First Amendment does not compel public access to discovery materials that are neither used at trial nor submitted as a basis for adjudication." (*Id.* at pp. 1208–1209, fn. 25.)

Based upon this footnote in *NBC Subsidiary*, the Judicial Council in 2001 adopted two rules concerning the sealing of trial court records that are presently rules 2.550 and 2.551 of the California Rules of Court (collectively, the sealed records rules, or rules).[1] Those rules create a presumption of public access to some, but not all, court-filed documents. The sealed records rules "do not apply to discovery motions and records filed or lodged in connection with discovery motions or proceedings. However, the rules do apply to discovery materials that are used at trial or submitted as a basis for adjudication of matters other than discovery motions or proceedings." (Rule 2.550(a)(3).)

The main issue presented by this appeal is whether the rules' presumption of public access applies to discovery documents produced and designated confidential pursuant to a protective order, where the records are later attached to a court-filed pleading that is not used at trial or to adjudicate a material controversy. The resolution of that issue turns, in substantial part, on the meaning of the limiting phrase "as a basis for adjudication" found in footnote 25 of the *NBC Subsidiary* decision, in the sealed records rules, and in an advisory committee comment to the rules.

This shareholder derivative action was brought on behalf of the corporation, Mercury Interactive Corporation (Mercury), to recover damages to the corporation resulting from the alleged backdating of stock options by several former Mercury executives. (See generally *In re Zoran Corp. Derivative Litigation* (N.D.Cal. 2007) 511 F.Supp.2d 986, 996–997 [discussing history and mechanics of stock options backdating].) Representatives of the media, respondents herein (collectively, the media),[2] sought an order unsealing an amended and consolidated complaint (Complaint) and 17 exhibits thereto. That pleading had been filed with the court below under seal pursuant to a stipulated protective order agreed to by the parties and entered by the court;

---

[1] All further references to rules are to the California Rules of Court. The predecessors to rules 2.550 and 2.551 were former rules 243.1 and 243.2, respectively; they were amended and renumbered effective January 1, 2007. Rules 2.550 and 2.551 do not differ materially from the sealed records rules as originally adopted, and the matter at issue here was decided in January of this year. Accordingly, we will refer throughout this opinion to the rules as they are currently numbered.

[2] Only one of the respondents, The Recorder, originally sought an order unsealing the complaint and its exhibits. Prior to the court ruling on the motion, respondents San Francisco Chronicle and Bloomberg News joined in the motion to unseal. For simplicity here, the actions taken and arguments advanced by one or more of the respondents shall be referred to collectively as those of the media.

the reason for the sealed filing was that the exhibits had been previously produced by Mercury in discovery with a confidentiality designation. The media's motion was opposed by defendants Kenneth Klein, Susan Skaer, Sharlene Abrams (hereafter, collectively, defendants), by defendant Douglas Smith, and by Mercury. The court granted the motion. The action, however, was dismissed shortly after the records were ordered unsealed, based upon the court's conclusion that plaintiffs lacked standing to bring a derivative suit.

Defendants and Mercury appeal from the order unsealing the records.[3] We conclude that the trial court erred when it found that there was a presumption of public access to the exhibits to the Complaint under *NBC Subsidiary, supra,* 20 Cal.4th 1178, and under the sealed records rules. The court therefore incorrectly imposed upon the parties who sought to keep the records sealed a significant burden of showing that there was an overriding interest in keeping them sealed, and that this overriding interest would have been substantially prejudiced by granting the media's request. Because of the erroneous application of this legal standard, the court erred in unsealing the exhibits to the Complaint.[4] Accordingly, we will reverse the order and remand the case for further proceedings.

## PROCEDURAL BACKGROUND

### I. *The Pleadings and Motion to Unseal*

This action commenced on or about October 14, 2005, with the filing by plaintiff Charles Conrardy of a shareholder derivative complaint on behalf of Mercury. Plaintiff Paul Morillo filed a similar suit on November 5, 2005. The two suits were ordered consolidated in December 2005. (Conrardy and Morillo are hereafter collectively referred to as plaintiffs.) Following Mercury's motion for partial termination of the derivative litigation, the court entered an order dismissing the case as to certain individual defendants, staying the litigation as to another individual defendant, and ordering the filing of a consolidated complaint by plaintiffs. Pursuant to that order, plaintiffs filed their consolidated Complaint on September 22, 2006.

Plaintiffs—both shareholders of Mercury—alleged in the Complaint filed under seal that the action was being prosecuted against defendants at the

---

[3] The February 7, 2007 notice of appeal filed by defendants also included Smith as an appellant. Smith filed neither an opening brief nor a joinder in the opening brief filed on behalf of defendants. After Smith failed to file a brief following our giving of notice under rule 8.220(a), this court dismissed the appeal only as to Smith on November 13, 2007.

[4] For the reasons explained below, we address the propriety of the order only insofar as it concerns the unsealing of the Complaint's exhibits.

request of a special litigation committee of Mercury's board of directors.[5] In the time period from 1996 to 2002, defendants below[6]—former Mercury officers and directors—allegedly "engaged in an unlawful stock option back-dating scheme whereby they grossly enriched themselves at the expense of Mercury by granting themselves (and their colleagues) millions of under-priced options to purchase Mercury stock." According to the Complaint, defendants granted themselves backdated stock options that had an aggregate excess value (i.e., increased value by backdating the option grant date, as compared with the actual option grant date) of over $54 million. In addition to defendants receiving this "immediate paper gain," plaintiffs alleged that defendants received an aggregate of nearly $88 million in proceeds from their stock sales that were improper because they were made at a time they possessed material inside information concerning their own backdating scheme and the consequent overstatement of Mercury's net income.

Plaintiffs alleged that defendants' actions resulted, inter alia, in the over-statement of Mercury's net income by nearly $570 million from 1992 through March 2005, which required the company to file a restatement in July 2006; Mercury's incurring $70 million in attorney fees for the investigation of the backdating; the company's being delisted from the NASDAQ stock ex-change; and Mercury's being investigated by the Securities and Exchange Commission (SEC). Defendants' conduct allegedly caused damage to Mercury in excess of $100 million. Plaintiffs alleged in the Complaint that Mercury's special litigation committee concluded in June 2006 that defend-ants had breached their fiduciary duties to the company by backdating stock options, and that the lawsuit should continue against defendants, "thus transforming the derivative nature of this action into a direct action by Mercury . . . ."

On September 29, 2006, the media made a request by letter to the court that the Complaint that had been filed under seal be ordered unsealed. The court issued an order directing the parties to show cause why the Complaint should remain under seal. The parties thereafter entered into a stipulation that resulted in a continuance of the hearing on that request and established a briefing schedule for a formal motion to unseal by the media.

On October 26, 2006, the media filed a formal motion to unseal the Complaint. They argued, inter alia, that civil litigation documents filed with

---

[5] As explained *post*, the full text of the Complaint subsequently became public. Therefore, there is no confidentiality restriction preventing us from summarizing the allegations of the Complaint here.

[6] In our discussion of the proceedings below (Procedural Background, pts. I. and II.), the term "defendants" shall refer to all four of the individual defendants (i.e., Klein, Skaer, Abrams, and Smith). Elsewhere in this opinion, "defendants" refers to the three individual defendants whose appeals remain pending here. (See fn. 3, *ante*.)

the court are presumptively public, the Complaint concerned a matter of great public interest (alleged stock option backdating), and there was no overriding interest here that overcame the public's right of access to the pleading. Separate oppositions to the media's motion were filed by defendants and Mercury on November 6, 2006.

On December 8, 2006, defendants filed a demurrer to the Complaint, contending that the action was not maintainable because plaintiffs lacked standing. They argued that because of a merger consummated in November 2006 in which all of Mercury's stock—including shares previously owned by plaintiffs—was acquired by Hewlett-Packard Company (HP), plaintiffs did not have standing to bring a shareholder derivative suit. The demurrer was noticed for hearing on January 19, 2007.

On January 3, 2007, defendants and Mercury each filed formal applications to seal (1) the Complaint and its exhibits, and (2) plaintiffs' opposition to the demurrer. That application was prompted by the court's interim order observing that no party had filed an application to seal the Complaint, and that the sealed records rules did not permit the court's sealing of records "solely based on the stipulation of the parties." On January 5, 2007,[7] the court heard extended argument on the media's motion to unseal and on defendants' and Mercury's applications to seal. On January 24, 2007, the court granted the media's motion to unseal, but stayed the order until February 8, 2007, to permit the parties to exercise any appellate remedies.

## II. Proceedings in Lower Court Following Order Unsealing Records

On February 5, 2007, the court sustained defendants' demurrer to the Complaint without leave to amend. It concluded that under the "continuous ownership doctrine, [p]laintiffs lost standing to maintain this derivative action when they ceased being [Mercury] shareholders as a result of the HP acquisition."[8] Judgment was entered on the demurrer on March 7, 2007.[9]

---

[7] A number of lengthy briefs were submitted by the parties on whether the hearing concerning the unsealing of the Complaint should occur before the disposition of defendants' demurrer. The court determined that it would hear the motion to unseal before it heard the demurrer.

[8] After this ruling by the trial court below, United States District Court Judge Jeremy Fogel similarly dismissed consolidated federal derivative actions that had been filed nominally on behalf of Mercury, because the plaintiffs there lost standing after HP's acquisition of all Mercury stock. (See In re Mercury Interactive Corp. Deriv. Litigation (N.D.Cal. 2007) 487 F.Supp.2d 1132.)

[9] We note that on April 10, 2007, plaintiffs filed a notice of appeal from the judgment entered on the court's order sustaining demurrer. That appellate proceeding is pending in this court (Morillo v. Klein (H031435, app. pending)), but its pendency has no impact upon our disposition of this matter.

Defendants applied for a stay of the court's order unsealing the Complaint. The court granted the application and extended the stay of the order to February 16, 2007.

On February 19, 2007, defendant Skaer filed an ex parte motion to seal a copy of the Complaint that she contended had been inadvertently filed *unsealed* as an exhibit attached to a declaration of counsel. The application was accompanied by a declaration of Skaer's counsel, M. Todd Scott. In it, Scott stated that he had filed on October 6, 2006, a motion to stay action and a supporting declaration to which a number of exhibits were attached, including a copy of the Complaint as exhibit E; that he had intended that the Complaint be filed under seal, but it was inadvertently filed unsealed; and that he had not learned that the Complaint had not been filed under seal until February 16, 2007. The media opposed the application, inter alia, on the grounds that defendants' "own voluntary disclosure in an unsealed document it filed in this court . . . precludes any ability of defendants to meet the already-heavy burden imposed by Rule 2.550 to justify sealing"; and the Complaint, as a result of it having been filed in an unsealed document, had already been widely publicized in the Wall Street Journal and on the Internet in articles published on or about February 19, 2007. The court granted the application and ordered that all copies of the Complaint on file with the court be sealed until February 26, 2007.

III. *Appellate Proceedings*

Defendants and Smith, and Mercury filed separate timely notices of appeal from the order unsealing the Complaint, its exhibits, and plaintiffs' opposition to demurrer on February 7, 2007. Shortly thereafter, the media filed a motion to dismiss the appeal that was opposed by defendants. We ordered the deferral of the disposition of that motion pending consideration of the appeal.[10]

Defendants and Smith also filed a petition for a writ of supersedeas seeking a stay of the order unsealing records. Mercury joined in that petition. We

---

[10] The media have filed a request for judicial notice of (1) a complaint filed in federal court on May 31, 2007, by the SEC against Mercury, its former chief executive officer (Amnon Landan), Abrams, Smith, and Skaer, and (2) an SEC press release of the same date announcing the suit's filing and a settlement between SEC and Mercury. Based upon our discussion, *ante*, those materials for which judicial notice is requested do not have a bearing on the legal issues we decide here. Accordingly, we deny the media's request for judicial notice. (*Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063–1065 [31 Cal.Rptr.2d 358, 875 P.2d 73], overruled on another ground in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1276 [63 Cal.Rptr.3d 418, 163 P.3d 106].)

issued two temporary stay orders.[11] On May 10, 2007, we issued a writ of supersedeas, staying enforcement (pending the appeal) of the order only insofar as it pertained to the unsealing of the Complaint's exhibits. Because the Complaint had previously been inadvertently disclosed and publicized, defendants, in their reply submitted in support of their petition for writ of supersedeas, conceded that their challenge to the order was moot except insofar as it concerned the Complaint's exhibits.

## DISCUSSION

### I. *Issue on Appeal and Parties' Contentions*

The main issue presented in this appeal is whether the court erred in granting the media's motion to unseal the exhibits to the Complaint. The parties have filed extensive briefs concerning this appeal, defendants' supersedeas petition, and the media's motion to dismiss the appeal on mootness grounds (see pt. III. of Discussion, *post*). At the risk of oversimplifying the parties' positions or overlooking some of them, we briefly outline below what we believe to be the central contentions.

Defendants argue[12] that there is no First Amendment right of access to discovery materials filed with the court under the circumstances presented here. They argue that the Complaint's exhibits were "raw discovery" materials that were designated confidential pursuant to a stipulated protective order. The records did not become presumptively accessible to the public simply because plaintiffs (the nondesignating parties) chose to attach them to their Complaint. They contend further that the sealed records rules do not apply here because the exhibits were neither "used at trial [nor] submitted as a basis for adjudication." (Rule 2.550(a)(3).) Defendants emphasize that plaintiffs attached the confidential discovery materials to the Complaint at a time when the future of the lawsuit was in question, based upon the pendency of defendants and

---

[11] We granted defendants' request for judicial notice of certain pleadings filed and a reporter's transcript of a hearing in a related federal securities class action suit involving Mercury and some of the individual defendants, *In re Mercury Interactive Corp. Securities Litigation* (N.D.Cal., July 30, 2007, No. C05-3395 JF) 2007 U.S.Dist. Lexis 59171. These pleadings reflect the fact that the federal court there also issued multiple orders temporarily staying the superior court's order unsealing records.

[12] While Mercury filed a separate notice of appeal and a joinder in defendants' opening brief, it did not join in most of defendants' legal arguments. Specifically, Mercury did not join in defendants' claims on appeal that (1) there is no constitutional right of public access to court-filed discovery materials under these circumstances; (2) the sealed records rules do not apply here; and (3) the order below undermines the integrity of the judicial process and discourages the resolution of discovery issues. Accordingly, we will attempt to distinguish between arguments made by defendants only from those made by all appellants.

Smith's motion to stay due to plaintiffs' lack of standing.[13] Indeed, they argue that the Complaint "was defective, if not a legal nullity" because it was ultimately dismissed by the court below.

The media naturally disagree. They assert first that defendants are judicially estopped from denying the applicability of the sealed records rules by their execution of the stipulated protective order. The media also argue that defendants have waived the right to contend that the sealed records rules are inapplicable because, among other things, defendants themselves filed an *unsealed* copy of the Complaint. On the merits, the media argue that the sealed records rules "plainly apply to all court records other than those filed in connection with a discovery motion or proceeding."

Defendants and Mercury also contend that, assuming arguendo the sealed records rules apply here, it was nonetheless error for the trial court to conclude that they did not make a sufficient showing under the rules to warrant an order sealing the exhibits to the Complaint. They argue that the Private Securities Litigation Reform Act of 1995, 15 United States Code section 78u-4(b)(3)(B) (Reform Act) provided "an overriding interest that [overcame] the right of public access to the record[s]" (rule 2.550(d)(1)), and that "overriding interest support[ed] sealing the record" (rule 2.550(d)(2)), as required for sealing records governed by the rules. There is a parallel federal securities class action[14] against Mercury and some of the individuals who are defendants herein. There is a motion to dismiss pending in that federal case, and thus there is a mandatory stay on discovery under the Reform Act.[15] Thus (defendants and Mercury urge), there is an overriding interest in keeping the exhibits sealed in this now defunct state case while the discovery stay remains in place in the parallel federal action. Otherwise, the plaintiffs in the federal case would be able to obtain discovery to which they were not otherwise entitled because of the stay; thus (defendants and Mercury argue),

---

[13] Klein had filed a motion for a protective order staying discovery on August 28, 2006, approximately one month before plaintiffs filed the Complaint. In the motion, Klein argued, inter alia, that discovery propounded by plaintiffs would serve no useful purpose because the pending merger under which HP was to acquire all of the stock of Mercury, when consummated, would divest plaintiffs of standing to sue.

[14] In its order, the court below took "judicial notice of the following extensive judicial proceedings involving [Mercury]: [f]ederal class action, *In re Mercury Interactive Corp. Sec. Litig.,* N.D. Cal. 05-3395; [f]ederal derivative action, *In re Mercury Interactive Corp. Derivative Litig.,* N.D. Cal. 05-4642; [f]ederal 16(b) action, *Klein v. Landan,* N.D. Cal. 06-2971, and [two] Delaware state derivative actions (Delaware Court of Chancery)[,] *Schwartz v. Landan,* Civil Action No. 1755[,] and *Cropper v. Landan,* Civil Action No. 1938-N."

[15] This is a recital of defendants' arguments as presented in their appellate briefs. After the close of briefing, there was publicity concerning the court's dismissal without prejudice, and pending settlement of, the federal securities litigation that caused this court to request supplemental briefing from the parties as described more fully in part III of the Discussion, *post.*

the objectives of the Reform Act would be thwarted. In further support of this argument, defendants and Mercury note that after enacting the Reform Act, Congress enacted the Securities Litigation Uniform Standards Act of 1998, 15 United States Code section 78u-4(b)(3)(D) (SLUSA), under which "a [federal] court may stay discovery proceedings in any private action in a State court, as necessary in aid of its jurisdiction, or to protect or effectuate its judgments . . . ." The sealing of the Complaint's exhibits (they argue) is thus consistent with the federal court's discretionary power under SLUSA to stay discovery in state court proceedings such as the present case.

The media respond that the court below properly relied on *Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167 [132 Cal.Rptr.2d 490, 65 P.3d 1255] to find that there was no overriding interest to justify sealing because of the Reform Act. They assert that defendants and Mercury's concession that under *Small*, the Reform Act is inapplicable to the instant shareholder derivative state suit is fatal to their "overriding interest" contention. The media argue further that defendants failed to make a sufficient showing below to establish the other three elements required under rule 2.550(d), namely, that there was "[a] substantial probability . . . that the overriding interest [would] be prejudiced if the record is not sealed" (rule 2.550(d)(3)); "[t]he proposed sealing [was] narrowly tailored" (rule 2.550(d)(4)); and there were "[n]o less restrictive means . . . to achieve the overriding interest" (rule 2.550(d)(5)).

There are two procedural questions raised by the media that are threshold matters that we must decide before addressing the substantive arguments of the parties. First, is the order being challenged here appealable? Second, even if the order is subject to appeal, has it been rendered moot by the Complaint's becoming part of the public domain as a result of its having been inadvertently filed as an *unsealed* exhibit with the court?

## II. *Appealability*

We are confronted initially with the issue of whether the judgment below is appealable. The media contend that the order granting the motion to unseal is not an appealable order. This issue is central to our jurisdiction. (*Olson v. Cory* (1983) 35 Cal.3d 390, 398 [197 Cal.Rptr. 843, 673 P.2d 720]; *Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 436 [129 Cal.Rptr.2d 436].)

Code of Civil Procedure section 904.1 is "[t]he principal statute [that] defines the scope of appellate jurisdiction in the Court of Appeal . . . ." (*Samuel v. Stevedoring Services* (1994) 24 Cal.App.4th 414, 417 [29 Cal.Rptr.2d 420].) Generally speaking, only final judgments are appealable under the statute. (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2006) ¶¶ 2:21–2:23, pp. 2-17 to 2-18.) This " 'one

final judgment' rule [is] a fundamental principle of appellate practice that prohibits review of intermediate rulings by appeal until final resolution of the case. 'The theory is that piecemeal disposition and multiple appeals in a single action would be oppressive and costly, and that a review of intermediate rulings should await the final disposition of the case.' [Citations.]" (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 697 [107 Cal.Rptr.2d 149, 23 P.3d 43].)

██ Plainly, an order concerning the sealing of court records is not made expressly appealable under Code of Civil Procedure section 904.1. But the collateral order doctrine is one exception to the one final judgment rule. (*Lester v. Lennane* (2000) 84 Cal.App.4th 536, 561–562 [101 Cal.Rptr.2d 86].) As the Supreme Court has explained this exception, "[a]n appeal is allowed if the order is a final judgment against a party in a collateral proceeding growing out of the action. [Citations.] It is not sufficient that the order determine finally for the purposes of further proceedings in the trial court some distinct issue in the case; it must direct the payment of money by appellant or the performance of an act by or against him. [Citations.]" (*Sjoberg v. Hastorf* (1948) 33 Cal.2d 116, 119 [199 P.2d 668]; see also *In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368 [134 Cal.Rptr. 197, 556 P.2d 297].)

The collateral order exception has been applied in at least four cases involving appellate review of orders concerning the sealing of court records. In *Gilbert v. National Enquirer, Inc.* (1996) 43 Cal.App.4th 1135 [51 Cal.Rptr.2d 91], the plaintiff, a well-known actress, filed a cross-appeal from an order denying her motion to seal the court record in her action for defamation and invasion of privacy against her ex-husband and the National Enquirer. The court concluded that the order unsealing the record was an appealable "final order on a collateral issue. [Citation.]" (*Id.* at p. 1148, fn. 3.) Likewise, the First District Court of Appeal, Division Two, held that a minute order denying a third party journalist's application to unseal court records in a dissolution proceeding was an appealable collateral order. (*In re Marriage of Lechowick* (1998) 65 Cal.App.4th 1406, 1410–1411 [77 Cal.Rptr.2d 395].) In *In re Providian Credit Card Cases* (2002) 96 Cal.App.4th 292, 296 [116 Cal.Rptr.2d 833] (*Providian*), the plaintiffs, as well as a third party (the Hearst Corporation), sought an order unsealing various records (e.g., telemarketing scripts and marketing strategy memoranda) that had been filed under seal by the defendants in connection with a class certification motion. The defendants appealed from an order made under the sealed records rules that adopted a discovery referee's recommendation that 25 exhibits be unsealed. (*Id.* at p. 297.) The court concluded that the order was "appealable as the final determination of a collateral matter in that it directs the performance of an act—i.e., unsealing—against [the] defendants." (*Id.* at p. 297, fn. 2; see also *In re Marriage of Burkle* (2006) 135 Cal.App.4th 1045, 1051, fn. 6 [37

Cal.Rptr.3d. 805] (*Burkle*) [motion to dismiss appeal denied on basis that order denying sealing of pleadings in divorce proceeding was final order on collateral matter].)

■ The media argue unpersuasively that *Providian* and *Gilbert* should not be regarded as authorities for the proposition that orders concerning the sealing of records are appealable because those holdings appeared in footnotes in the opinions.[16] As we have noted, in both cases the court held that the sealing orders were appealable as final orders on collateral matters. The placement of the text expressing those holdings in footnotes does not negate their authoritative nature. (*Melancon v. Walt Disney Productions* (1954) 127 Cal.App.2d 213, 214, fn. * [273 P.2d 560] ["A footnote is as important a part of an opinion as the matter contained in the body of the opinion and has like binding force and effect"]; see also *People v. Jackson* (1979) 95 Cal.App.3d 397, 402 [157 Cal.Rptr. 154] [same].)

■ Lastly, the media assert that the order is nonappealable under the California Public Records Act (Gov. Code, § 6250 et seq.; CPRA)—which the media claim to be an analogous statute—which provides that disclosure orders are not subject to appeal. (Gov. Code, § 6259, subd. (c).) We reject that contention. Under Government Code section 6252, subdivision (f), the CPRA is expressly made inapplicable to the records of the judicial branch of the government. (*Copley Press, Inc. v. Superior Court* (1992) 6 Cal.App.4th 106, 111 [7 Cal.Rptr.2d 841] (*Copley Press*) [CPRA inapplicable to court records].)

We conclude therefore that the order directing the unsealing of the exhibits to the Complaint is appealable because it is a "final determination of a collateral matter in that it directs the performance of an act—i.e., unsealing—against defendants." (*Providian, supra*, 96 Cal.App.4th at p. 297, fn. 2.)

## III. *Mootness*

■ The media argue that the issue on appeal—namely, whether it was error for the court to order the unsealing of the exhibits attached to the Complaint—is moot. They assert that by defendants' own admission, one of their attorneys filed the Complaint along with its exhibits in an *unsealed* form in the court below as an exhibit to a declaration on October 6, 2006. "Generally, an appeal will be dismissed as 'moot' when, through no fault of respondent, the occurrence of an event renders it impossible for the appellate

---

[16] The media took a position below that is arguably contrary to their claim here that the order is not an appealable order on a collateral matter. In briefs filed in connection with their motion to unseal, the media argued that their motion was "completely unaffected by the pendency of the [d]emurrer and should still be heard even if the action [were] dismissed."

court to grant appellant any effective relief. [Citations.]" (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs, *supra*, ¶ 5:22, p. 5-5.) As a result of this unsealed filing, the Complaint—which made reference to its exhibits—was the subject of a Wall Street Journal article. In addition, the Complaint was posted on the Internet on February 19, 2007. Therefore, the media argue that no effective relief can be ordered by this court even were defendants' appeal meritorious.

Defendants respond that although the Complaint and its exhibits were filed, through inadvertence, in an unsealed manner, only the Complaint was the subject of publicity. They argue that the exhibits—which they repeatedly characterize as "raw discovery" materials—were never disseminated and are therefore still available for protection through sealing. Defendants assert further that the information contained in the exhibits is much broader than the excerpts of those exhibits identified in the Complaint. Therefore, they argue that the appeal has not been rendered moot as to the potential disclosure of the exhibits.

Appellate courts generally will not review matters that are moot. "A case is moot when the decision of the reviewing court 'can have no practical impact or provide the parties effectual relief. [Citation.]' [Citation.] 'When no effective relief can be granted, an appeal is moot and will be dismissed.' [Citation.]" (*MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 214 [130 Cal.Rptr.2d 564].) An appeal will be decided, however, where part but not all of the controversy has been rendered moot. (See *Vernon v. State of California* (2004) 116 Cal.App.4th 114, 120–121 [10 Cal.Rptr.3d 121] [claim that Cal/OSHA (Department of Industrial Relations Division of Occupational Safety and Health) regulations discriminated against the plaintiff not rendered moot by grant of California Department of Industrial Relations for temporary " 'experimental variance' " from compliance with regulation; effectual relief attainable because if regulation declared invalid, the plaintiff "will not need to rely upon additional, speculative variances that may or may not be granted"]; *Seacall Development, Ltd. v. Santa Monica Rent Control Bd.* (1999) 73 Cal.App.4th 201, 204–205, fn. 1 [86 Cal.Rptr.2d 229] [rent control controversy concerning 11 condominium units not rendered moot by the appellant's subsequent sale of eight of the units, rejecting the respondent's argument that dispute was " 'virtually moot' "].) And appellate courts may in their discretion decide questions that have been rendered moot as a result of subsequent events, such as the death of a litigant, where the issues presented are of importance and "are capable of repetition yet tend to evade review." (*Conservatorship of Wendland* (2001) 26 Cal.4th 519, 524, fn. 1 [110 Cal.Rptr.2d 412, 28 P.3d 151]; see also *Konig v. Fair Employment & Housing Com.* (2002) 28 Cal.4th 743, 745–746, fn. 3 [123 Cal.Rptr.2d 1, 50 P.3d 718].)

We have reviewed the contents of the Complaint—as well as the sealed exhibits to the Complaint that are at issue here—to determine whether the controversy is moot.[17] We will describe the Complaint's exhibits in general terms in order not to compromise the confidentiality claimed by defendants with respect to them. (See *Providian, supra,* 96 Cal.App.4th at p. 303.)

There are 17 exhibits attached to the Complaint, labeled consecutively as exhibits 1 through 17. Generically, they consist of an aggregate number of 25 e-mail communications; one spreadsheet; one reprinted newspaper article; one metadata document from a computer; a corporate document ("Unanimous Written Consent"); and seven graphs concerning specific stock option grants. The Complaint refers to each of the 17 exhibits. Some of the exhibits bear specific confidentiality designations; others do not. And one exhibit—a reprint of a newspaper article—is obviously not a confidential document (irrespective of whether it did or did not bear a confidentiality designation).

From a review of the Complaint's exhibits, it is clear that collectively they contain a significant amount of material other than what is excerpted in the Complaint itself. While it is true that the text of some of the exhibits (or portions thereof) is quoted or paraphrased in the Complaint, the substance of the exhibits is not disclosed in its entirety in the Complaint. For example, although one of the e-mails that is included in exhibit 6 is quoted fully in the Complaint, the remaining six e-mails in the collective exhibit are not quoted or paraphrased in the Complaint. Similarly, although one of the e-mails included in exhibit 7 is quoted in full in the Complaint and another is quoted in part, the remaining four e-mails in the collective exhibit are not quoted or referred to in the Complaint.

We therefore reject the media's claim that the appeal is moot on the basis that the Complaint, after the court's order, became part of the public domain. While it is obvious that the Complaint contains references to the exhibits and in some instances discloses all or substantially all of their substance, it is equally clear that significant portions of the substance of the exhibits have not been revealed in the Complaint. Therefore, the controversy concerning the court's order unsealing the Complaint's exhibits is not moot.

Finally, we address whether developments subsequent to the close of briefing have rendered this appeal moot. This court became aware through

---

[17] Defendants did not include the exhibits to the Complaint in the appellate record, noting that they had chosen not to "[i]n an effort to minimize exposure" of the documents they contend are confidential. They indicated, however, in opposition to the motion to dismiss that they had no objection to this court's in camera review of the documents. And the media stated that they "encourage the Court to accept that offer and look at the exhibits before deciding" the motion to dismiss. Accordingly, we ordered that the record be augmented to include the sealed exhibits to the Complaint and directed the court below to deliver those records under seal for our in camera review in connection with the appeal.

press reports in October 2007 of a pending settlement of the related federal class action securities suit involving Mercury. At least one newspaper article also reported that the federal judge presiding over the case had previously dismissed the plaintiffs' claims in July 2007 but had granted them leave to amend. (Anderson, *HP Settles Record-High Options Case*, Daily Journal (Oct. 16, 2007) p. 1.) As a result, we requested that the parties submit letter briefs advising us of the impact, if any, of the reported settlement of the federal suit upon this appeal. We have received and considered the letter briefs of the parties. We have concluded therefrom that the pending settlement of the related federal suit does not render this appeal moot.

The main substantive issues that must be resolved through this appeal are whether the court below properly concluded that (1) the sealed records rules applied to the Complaint's exhibits, and (2) defendants failed to show as required under the rules that there was an overriding interest that would be prejudiced by disclosure such that the exhibits should be sealed. Defendants acknowledge that the settlement of the federal suit would impact their argument as to the second issue, namely, whether they made a sufficient showing of an overriding interest to justify the sealing of the exhibits to the Complaint. But they point out in their letter brief that the proposed settlement of the federal class action litigation is still subject to federal court approval. (See Fed. Rules Civ.Proc., rule 23(e)(1)(A), 28 U.S.C.) We will not presume such approval.

In any event, irrespective of whether the federal case has settled (or will ultimately settle), the question of whether the sealed records rules apply to the exhibits under the circumstances presented here is unaffected by the status of the federal suit. Accordingly, regardless of whether the settlement of the federal securities case becomes final, defendants' appeal of the order unsealing the exhibits is not moot.[18]

IV. *Standard of Review*

Defendants contend that the order unsealing the Complaint's exhibits is subject to de novo review. The media argue that we should review the order to determine whether the court abused its discretion.

We acknowledge that the First District Court of Appeal (Division Four) has held that an order unsealing records under the sealed records rules is

---

[18] As we have noted above, even if the appeal has been rendered moot because the Complaint is now part of the public domain and/or because the related federal securities suit has settled—a finding we do not make here—we have the discretion to decide important questions even if they have been rendered moot by subsequent events. (*NBC Subsidiary, supra,* 20 Cal.4th at p. 1190, fn. 6.) We deem the question of the applicability of the sealed records rules to the discovery attached as exhibits to the Complaint under the circumstances presented here to be an important issue.

reviewed on appeal for abuse of discretion. (*Providian, supra,* 96 Cal.App.4th at pp. 299–301; see also *People v. Jackson* (2005) 128 Cal.App.4th 1009, 1020 [27 Cal.Rptr.3d 596] [dictum noting that probable standard for reviewing order unsealing records is abuse of discretion, but holding that order sealing records is subject to de novo review].) Were this appeal simply an examination of the court's conclusion that defendants failed to establish facts sufficient to justify sealing, we might agree that our review would be limited to determining whether the court abused its discretion in so holding. But as we discuss below, our initial focus is upon whether the court correctly determined that the Complaint's exhibits were subject to the sealed records rules at all.

Appellate courts may independently determine the proper interpretation of statutes. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956]; *International Engine Parts, Inc. v. Feddersen & Co.* (1995) 9 Cal.4th 606, 611 [38 Cal.Rptr.2d 150, 888 P.2d 1279].) Likewise, appellate courts conduct a de novo review of interpretations of relevant California Rules of Court. (*In re Daniel M.* (1996) 47 Cal.App.4th 1151, 1154 [55 Cal.Rptr.2d 17]; see also *Chambers v. Kay* (2002) 29 Cal.4th 142, 148 [126 Cal.Rptr.2d 536, 56 P.3d 645] [interpretation of Rules of Professional Conduct presents question of law for independent review]; *Joseph v. San Francisco Housing Authority* (2005) 127 Cal.App.4th 78, 81 [25 Cal.Rptr.3d 179] ["de novo review of the meaning and application of the statutes, regulations and rules"].)

Our initial focus is on whether the sealed records rules apply to the Complaint's exhibits under the circumstances presented in this instance. This requires us to interpret the rules and the Supreme Court's discussion in *NBC Subsidiary, supra,* 20 Cal.4th 1178, which was responsible for the rules' adoption by the Judicial Council. Ultimately, the central question is whether there is an unrestricted right of public access under the First Amendment to discovery material filed in civil litigation, irrespective of the circumstances under which it is filed and regardless of whether the previously produced discovery material had been previously designated confidential pursuant to a protective order. These questions are matters that we decide de novo.[19]

---

[19] Various federal appellate courts have agreed that the de novo standard is appropriate for the review of legal issues pertaining to trial court orders sealing or unsealing records or concerning the issuance of protective orders. (See, e.g., *Phillips ex rel. Estates of Byrd v. G.M. Corp.* (9th Cir. 2002) 307 F.3d 1206, 1210 (*Phillips*) [determination of whether trial court applied correct legal standard in granting, modifying, or vacating protective order is one of law]; *U.S. v. El-Sayegh* (D.C.Cir. 1997) 327 U.S. App.D.C. 308 [131 F.3d 158, 160] [de novo review of issue of existence of right of access to court documents under either First Amendment or common law]; *Pansy v. Borough of Stroudsburg* (3d Cir. 1994) 23 F.3d 772, 783–784 [independent review of trial court's interpretation and application of legal standard for granting or modifying confidentiality order].)

V. NBC Subsidiary *Decision and Sealed Records Rules*

Before addressing the issue of whether the court erred in granting the media's motion to unseal the Complaint and its exhibits, we will discuss the *NBC Subsidiary* case and the sealed records rules.

A. NBC Subsidiary *Decision*

In *NBC Subsidiary*, *supra*, 20 Cal.4th at page 1182, the trial court on its own motion closed all proceedings held outside of the jury's presence in the civil trial of Sandra Locke's tort claims against Clint Eastwood that arose out of alleged promises by Eastwood to assist Locke in motion picture endeavors. It did so to prevent the nonsequestered jury from hearing matters that were not presented to it in the trial. (*Id.* at p. 1183.) In reviewing the propriety of that exclusion order, the Supreme Court conducted an exhaustive review of the right of public access to court proceedings under the First Amendment. It noted that, beginning with *Richmond Newspapers, Inc. v. Virginia* (1980) 448 U.S. 555 [65 L.Ed.2d 973, 100 S.Ct. 2814] (*Richmond Newspapers*), the United States Supreme Court had affirmed "that 'a presumption of openness inheres in the very nature of a criminal trial under our system of justice.' [Citation.]" (*NBC Subsidiary*, *supra*, at p. 1200, quoting *Richmond Newspapers*, *supra*, at p. 573.) Therefore, an order closing a criminal trial was reversed by the *Richmond Newspapers* court where the trial court had made no findings supporting it and had not considered alternatives less drastic than closure; the high court concluded "that '[a]bsent an overriding interest articulated in findings, the trial of a criminal case must be open to the public.' [Citation.]" (*NBC Subsidiary*, *supra*, at p. 1200, quoting *Richmond Newspapers*, *supra*, at p. 581.)

After reviewing United States Supreme Court decisions dealing with the public right of access to criminal proceedings under the First Amendment, the *NBC Subsidiary* court observed that while no cases issued from the high court had specifically recognized the existence of a similar constitutional right of access with respect to civil proceedings, the high court's reasoning "suggests that the First Amendment right of access extends beyond the context of criminal proceedings and encompasses civil proceedings as well. [Citations.]" (*NBC Subsidiary*, *supra*, 20 Cal.4th at p. 1207.) After noting that lower court cases had unanimously found the existence of a constitutional right of access to civil trials (*id.* at pp. 1208–1209), the court concluded that "in light of the high court case law and its progeny, . . . in general, the First Amendment provides a right of access to ordinary civil trials and proceedings, that constitutional standards governing closure of trial proceedings apply in the civil setting . . . ." (*Id.* at p. 1212.) It held further that Code of

Civil Procedure section 124[20] should be construed "in a manner compatible with those [constitutional] standards." (*NBC Subsidiary, supra,* at p. 1212, fn. omitted.)

Based upon its conclusion that there was, in general, a First Amendment right of access to civil trials and proceedings, the court concluded that the trial court's order closing certain trial proceedings could not survive constitutional scrutiny. (*NBC Subsidiary, supra,* 20 Cal.4th at p. 1225.) In so concluding, it held that "*before* substantive courtroom proceedings are closed or transcripts are ordered sealed, a trial court must hold a hearing and expressly find that (i) there exists an overriding interest supporting closure and/or sealing; (ii) there is a substantial probability that the interest will be prejudiced absent closure and/or sealing; (iii) the proposed closure and/or sealing is narrowly tailored to serve the overriding interest; and (iv) there is no less restrictive means of achieving the overriding interest." (*Id.* at pp. 1217–1218, fns. omitted.) The *NBC Subsidiary* court acknowledged that while the trial court's rationale of preventing prejudicial information from reaching the jury, in theory, could provide an overriding interest warranting closure, (1) there were no findings by the trial court that it was substantially probable that the parties' interest in a fair trial would be prejudiced without a closure order, and (2) the "blanket and sweeping order closing the courtroom during *all* nonjury proceedings was not narrowly tailored." (*Id.* at p. 1223.)

In the course of reviewing lower court decisions finding the existence of a First Amendment right of access to civil proceedings, the *NBC Subsidiary* court explained in a footnote that many reviewing courts had similarly found a constitutional right of access to certain documents filed with the court in civil litigation.[21] The court noted that "[n]umerous reviewing courts likewise have found a First Amendment right of access to civil litigation documents

---

[20] "Except as provided in Section 214 of the Family Code or any other provision of law, the sittings of every court shall be public." (Code Civ. Proc., § 124.)

[21] Because it served as the basis for the Judicial Council's subsequent adoption of the sealed records rules, the construction of which is critical to our decision in this case, we set forth that footnote here in its entirety: "Numerous reviewing courts likewise have found a First Amendment right of access to civil litigation documents filed in court as a basis for adjudication. (See *Brown & Williamson Tobacco Corp.* v. *F.T.C.* (6th Cir. 1983) 710 F.2d 1165, 1179 (*Brown & Williamson*) [documents filed in civil litigation; '[i]n either the civil or criminal courtroom, secrecy insulates the participants, masking impropriety, obscuring incompetence, and concealing corruption']; *Rushford* v. *New Yorker Magazine, Inc.* (4th Cir. 1988) 846 F.2d 249 (*Rushford*) [summary judgment pleadings]; *Matter of Continental Illinois Securities Litigation* (7th Cir. 1984) 732 F.2d 1302 (*Continental Illinois Securities*) [records related to 'hybrid summary judgment motion']; cf. *Grove Fresh Distributors, Inc.* v. *Everfresh Juice Co.* (7th Cir. 1994) 24 F.3d 893 [assuming both a First Amendment and a common law right of access to civil litigation documents].) Similarly, in [*Copley Press, supra,*] 6 Cal.App.4th 106 . . . , the Court of Appeal ruled that the press had a right to inspect the clerk's 'rough minute' books of a California trial court. The reviewing court observed that 'in general' the First Amendment provides 'broad access rights to judicial hearings and records . . . both in criminal

filed in court as a basis for adjudication. . . . [¶] By contrast, [other] decisions have held that the First Amendment does not compel public access to discovery materials that are neither used at trial nor submitted as a basis for adjudication." (*NBC Subsidiary, supra,* 20 Cal.4th at pp. 1208–1209, fn. 25, citations omitted.) It is thus clear that our high court enunciated a rule under which a certain class of court-filed documents is subject to a presumption of a First Amendment right of public access. What is less clear—as we discuss, *post*—are the parameters of that class of documents.

## B. *The Sealed Records Rules*

■ As a result of the *NBC Subsidiary* decision, the Judicial Council promulgated the sealed records rules, effective January 1, 2001. The standard for sealing records enunciated in the rules was based on *NBC Subsidiary.* (Advisory Com. com., rule 2.550.) The rules "recognize the First Amendment right of access to documents used at trial or as a basis of adjudication." (*Ibid.*) They provide, subject to certain exceptions we will discuss, that a court "record must not be filed under seal without a court order." (Rule 2.551(a).) Further, a "court must not permit a record to be filed under seal based solely on the agreement or stipulation of the parties." (Rule 2.551(a).) A party seeking the sealing of a court record must file a written motion or application with an accompanying memorandum and declaration stating facts justifying the record's sealing. (Rule 2.551(b)(1).) In so doing, the moving party must lodge with the court the record for which the sealing order is sought; the court then holds the record "conditionally under seal" while the motion or application is being decided. (Rule 2.551(b)(4).) The court may order the record sealed only upon it making express findings that the facts establish that "(1) There exists an overriding interest that overcomes the right of public access to the record; [¶] (2) The overriding interest supports sealing the record; [¶] (3) A substantial probability exists that the overriding interest will be prejudiced if the record is not sealed; [¶] (4) The proposed sealing is narrowly tailored; and [¶] (5) No less restrictive means exist to achieve the overriding interest." (Rule 2.550(d).) The court must state specifically in its sealing order the facts that support its issuance. (Rule 2.550(e)(1)(A).)[22]

and civil cases.' (*Id.,* at p. 111.) [¶] By contrast, decisions have held that the First Amendment does not compel public access to discovery materials that are neither used at trial nor submitted as a basis for adjudication. (See, e.g., *Seattle Times Co.* v. *Rhinehart* (1984) 467 U.S. 20 [104 S.Ct. 2199, 81 L.Ed.2d 17]; *Continental Illinois Securities, supra,* 732 F.2d at p. 1309, fn. 11; *Matter of Krynicki* (7th Cir. 1992) 983 F.2d 74, 75–76 (order by Easterbrook, J.) (*Krynicki*)); Fenner & Koley, [*Access to Judicial Proceedings: To Richmond Newspapers and Beyond* (1981)] 16 Harv. C.R.-C.L. L.Rev. [415,] 434 ['The presumption of access does not apply until the documents or records of such proceedings are filed with the court or are used at a judicial proceeding'].)" (*NBC Subsidiary, supra,* 20 Cal.4th at pp. 1208–1209, fn. 25.)

[22] "An order sealing the record must: [¶] (A) Specifically state the facts that support the findings; and [¶] (B) Direct the sealing of only those documents and pages, or, if reasonably

Rule 2.550(a)(2) provides that the "rules do not apply to records that are required to be kept confidential by law." The sealed records rules are also inapplicable to "discovery motions and records filed or lodged in connection with discovery motions or proceedings." (Rule 2.550(a)(3).) But the rules "do apply to discovery materials that are used at trial or submitted as a basis for adjudication of matters other than discovery motions or proceedings." (*Ibid.*) The rules, however—like the Supreme Court in *NBC Subsidiary*—do not explain the meaning of the phrase "submitted as a basis for adjudication." We therefore discuss below, in the procedural context before us, whether *NBC Subsidiary* and the sealed records rules apply to the Complaint's exhibits.

## VI. *Propriety of Order Unsealing Exhibits to Complaint*

Defendants argue that the court below erred in concluding that the Complaint's exhibits, by virtue of plaintiffs' having attached them to the Complaint that they filed, were subject to a presumptive right of public access under *NBC Subsidiary* and the sealed records rules. Before addressing the merits of that argument, we must first dispose of the media's threshold contentions that defendants' challenge to the order is barred by principles of judicial estoppel and/or waiver.

### A. *Judicial Estoppel and Waiver*

#### 1. *Judicial estoppel*

The media—citing, inter alia, *Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171 [70 Cal.Rptr.2d 96]—argue that defendants are judicially estopped from asserting the inapplicability of the sealed records rules to the Complaint's exhibits. They contend that defendants agreed in the stipulated protective order to comply with the rules. The media argue further that defendants "conced[ed] below that those [r]ules appl[ied]."

■ The doctrine of judicial estoppel applies when "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." (*Jackson v. County of Los Angeles, supra,* 60 Cal.App.4th at p. 183.) " 'The gravamen of judicial estoppel is . . . the intentional assertion of an inconsistent position that perverts the judicial machinery.' " (*Ibid.*) "Judicial estoppel is an extraordinary remedy that should

practicable, portions of those documents and pages, that contain the material that needs to be placed under seal. All other portions of each document or page must be included in the public file." (Rule 2.550(e)(1).)

be applied with caution. [Citation.]" (*Kelsey v. Waste Management of Alameda County* (1999) 76 Cal.App.4th 590, 598 [90 Cal.Rptr.2d 510].)

We reject the media's claim of judicial estoppel. Contrary to the media's apparent assertion, the stipulated protective order cannot be read as an agreement by defendants that the court filing of any discovery document would result in the applicability of the sealed records rules. Paragraph 8 of the stipulation specified certain procedures for the filing of discovery material previously designated confidential. It identified one procedure when a party attached confidential discovery material to papers filed in connection with a discovery proceeding. Consistently with rule 2.550(a)(3), that provision made no reference to the sealed records rules. The stipulation at paragraph 8 also specified different procedures where the designating party or nondesignating party filed with the court or sought to use at trial confidential discovery material "[i]n connection with the adjudication of matters other than discovery." In those instances, the stipulation made reference to the sealed records rules. As we discuss, *post*, this provision is consistent with *NBC Subsidiary* and the rules adopted as a result of that decision. The stipulation did not state that *all* court-filed discovery materials other than those relating to discovery motions were governed by the rules. Moreover—as we discuss below in connection with the media's waiver argument—defendants did not take the unambiguous position below that the sealed records rules were applicable to the circumstances here. There is no basis for a finding of judicial estoppel.

### 2. *Waiver*

The media also assert—as an argument apparently related to, but distinct from, their judicial estoppel contention—that defendants have waived the right to contend that the sealed records rules are inapplicable to the filing of the Complaint and exhibits. They base this waiver argument on the grounds that (1) the parties agreed below that the rules were applicable, (2) defendants took the position in opposition to the media's motion to unseal that the rules *did* apply to the filing of the Complaint's exhibits, (3) defendants ignored the requirements of the rules by waiting a period of months to file a motion to seal the Complaint and its exhibits, and (4) defendants themselves filed a copy of the *unsealed* Complaint in connection with a motion to stay. We reject the media's claim of waiver.

First, as we have noted, the stipulated protective order did not include the parties' agreement that the sealed records rules applied to the circumstances presented here, i.e., where discovery material that has been designated confidential is filed with the court neither in conjunction with a discovery motion nor in connection with the adjudication of a substantive matter. We do not read the stipulation to constitute a waiver of the legal position defendants assert here.

Second, it is true that the initial opposition to the motion to unseal filed by defendants and Smith did not develop the legal position that the sealed records rules were inapplicable. That initial opposition focused on plaintiffs' lack of standing to sue and the prejudicial impact of a proposed unsealing of the Complaint, particularly in light of the mandatory discovery stay imposed under the Reform Act in the related federal securities litigation.[23] But defendants and Smith, in later filings—both in opposition to the media's request that their motion be heard before the hearing on demurrer, and in connection with their application to seal records—did in fact argue that there was no First Amendment right of access to discovery materials that are not a basis for adjudication of the merits of the case.

Third, although defendants did not file a motion to seal for a period of several months after plaintiffs filed the Complaint, this inaction was consistent with their position that the sealed records rules did not apply under the circumstances. When they did file an application to seal on January 3, 2007, defendants and Smith did so in response to an observation in the trial court's interim order that it was "not permitted to seal records solely based on the stipulation of the parties"; in their application, they specifically noted that it was their belief that the sealed records rules were inapplicable in the situation before them. Defendants' failure to file a motion to seal for several months did not constitute a waiver.

Fourth, it is undisputed that Scott, Skaer's counsel, attached a copy of the Complaint as exhibit E to his declaration in support of the motion to stay filed on October 6, 2006, and that this exhibit was not sealed. It is also not disputed that this unsealed filing was inadvertent. Scott stated in his declaration that the cover page of the Complaint was marked "CONFIDENTIAL: FILED UNDER SEAL"; he was aware that the Complaint had been sealed; and he had knowledge at the time that the media had requested by letter that the court unseal the Complaint. He declared that, based on this knowledge, he had intended that the copy of the Complaint filed as an exhibit in connection with the stay motion be filed under seal and thought that it had been sealed. It was not until February 16, 2007, when he was so informed by the court clerk, that Scott learned that the document had not been filed under seal as he had believed. We do not find that defendants waived their legal position concerning the propriety of sealing the Complaint under these circumstances. Even if this unsealed filing constituted unequivocal conduct on the part of Skaer (through her counsel) supporting the media's claim of waiver—which it did

---

[23] Mercury in its initial opposition also focused on the potential harm that would result from an order unsealing the Complaint because of the pending federal litigation. But Mercury did argue briefly that under *NBC Subsidiary*, the presumption of public access did not apply to the circumstances here, where the Complaint that attached the exhibits was neither used at trial nor submitted as a basis for adjudication.

not—there is no basis for a finding that such conduct by Skaer's agent was chargeable to any of the other parties, i.e., Mercury, Klein, Abrams, or Smith.

The media cite the recent case of *Savaglio v. Wal-Mart Stores, Inc.* (2007) 149 Cal.App.4th 588 [57 Cal.Rptr.3d 215] (*Savaglio*) in support of their waiver contention. In *Savaglio*, a statewide class action suit was brought against Wal-Mart Stores, Inc. (Wal-Mart), by thousands of employees who alleged that they had not been properly compensated for meal and rest breaks and for time worked but not recorded in the timekeeping system. (*Id.* at p. 593.) After the case had been pending for over three years—and after substantive motions had been heard and decided—a local newspaper that attempted to review papers filed in connection with Wal-Mart's summary adjudication motion "learn[ed] that 'virtually all' [pleadings and motion papers] had been filed conditionally under seal." (*Id.* at p. 594.)

Prior to the newspaper's attempt to gain access to court records, Wal-Mart, in two separate proceedings, had sought writ review of trial court rulings on the plaintiffs' motion for class certification and its motion for summary adjudication. (*Savaglio, supra,* 149 Cal.App.4th at p. 594.) Large portions of the appendices to its writ petitions were filed in the appellate court without having been sealed. (*Id.* at p. 595.) The appellate court rejected Wal-Mart's attempt to assert confidentiality as to those portions of the appendices that had included documents that had been previously filed conditionally under seal in the trial court. It concluded that there had been a waiver, based upon Wal-Mart's (1) failure to obtain a sealing order in the trial court as required by the sealed records rules, (2) failure to obtain a sealing order in the appellate court as required by the rules, and (3) unreasonable assertion, in a letter to the appellate court in which it claimed inadvertence, that it had complied with the rules in obtaining a sealing order from the trial court. (*Id.* at pp. 599–600.) It therefore reversed the trial court's finding that there had been no waiver,[24] concluding that "Wal-Mart's conduct was so inconsistent with an intent to enforce its rights to obtain sealed records under the Rules of Court as to induce a reasonable belief that it had relinquished such right. [Citation.]" (*Savaglio,* at pp. 600–601, citing *Rheem Mfg. Co. v. United States* (1962) 57 Cal.2d 621, 626 [21 Cal.Rptr. 802, 371 P.2d 578].)

The circumstances here are very different. There was no effort by defendants or Mercury to seal a large volume of court records. In fact, the sealing occurred not as a result of their conduct, but because plaintiffs chose to attach to their Complaint discovery material that had been previously designated by Mercury

---

[24] After the trial court found that Wal-Mart had not waived its right to assert confidentiality, it granted in part and denied in part Wal-Mart's motion to seal; approximately *17,000 pages* of documents were ordered to remain under seal. (*Savaglio, supra,* 149 Cal.App.4th at pp. 595–596.)

as confidential. And unlike the sealing here, the sealing of pleadings in *Savaglio* plainly involved the sealing of documents submitted as a basis for adjudication of dispositive motions (i.e., class certification and summary adjudication motions). Further, the act claimed to have constituted a waiver here—Scott's inadvertently unsealed filing of a copy of the Complaint as an exhibit to his declaration—was not one that was so inconsistent with an intent to assert confidentiality, and was in any event not chargeable to the remaining defendants or Mercury.

We therefore conclude that defendants have not waived their claim that the exhibits to the Complaint were not subject to a presumption of access and should not have been ordered unsealed by the trial court.

### B. *Scope of Public Access under* NBC Subsidiary

#### 1. *Potential interpretations of* NBC Subsidiary

As we recently observed, the sealed records rules were adopted by the Judicial Council "[t]o effectuate the principles embodied in [the *NBC Subsidiary* decision] . . . ." (*H.B. Fuller Co. v. Doe* (2007) 151 Cal.App.4th 879, 888 [60 Cal.Rptr.3d 501] (*H.B. Fuller*); see also Advisory Com. com., rule 2.550.) Therefore, in determining the scope of the rules and their potential application to the Complaint's exhibits here, a close examination of footnote 25 of *NBC Subsidiary* is central to our review of the order.

As the Supreme Court stated, there is a First Amendment right of access to documents in civil litigation that are "filed in court as a basis for adjudication." (*NBC Subsidiary, supra,* 20 Cal.4th at p. 1208, fn. 25.) But there is no similar right of access "to discovery materials that are neither used at trial nor submitted as a basis for adjudication." (*Id.* at p. 1209, fn. 25.) Although the court did not explain what it meant by its twice-used phrase "as a basis for adjudication," at least two potential meanings are readily identifiable. Under the broadest of interpretations of the phrase—the one the media favor—the right of access would apply to any discovery material filed with the court, with the sole exception under rule 2.550(a)(3) of documents filed in connection with discovery motions or proceedings.[25] Public access would be inherent in the mere filing of the discovery material because the placing of the document in the court file would make it potentially something that would be used "as a basis for adjudication." A more narrow view of the phrase—which defendants argue applies—is that discovery material is subject to public access (and

---

[25] Indeed, counsel for the media argued below that "once [any discovery] is filed with the court it is public . . . ."

therefore governed by the rules) when it is filed with the court and is used in some manner by the court "as a basis for adjudication" of a material controversy.[26]

Having carefully reviewed *NBC Subsidiary* and the authorities cited therein, we reject the media's interpretation of the circumstances under which filed discovery material becomes "a basis for adjudication" such that there is a First Amendment right of access to it. Discovery material is not automatically submitted "as a basis for adjudication"—and thus does not perforce become accessible to the public—simply by virtue of it becoming a part of the court file. We come to this conclusion based upon various factors, including (1) the language used by the Supreme Court in footnote 25 of *NBC Subsidiary*, along with the cases cited in that two-sentence footnote, (2) the context in which the court decided *NBC Subsidiary*, and (3) the principles supporting, and policy objectives of, public access to the courts enunciated by the Supreme Court and in prior decisions of our nation's highest court.

## 2. NBC Subsidiary *language and cited authorities*

The first sentence of footnote 25 cannot reasonably be read as saying that there have been numerous appellate decisions finding the existence of a constitutional right of access to *any* documents filed in a civil case. (See *NBC Subsidiary, supra,* 20 Cal.4th at p. 1208, fn. 25 ["Numerous reviewing courts likewise have found a First Amendment right of access to civil litigation documents filed in court as a basis for adjudication."].) Were that its import, the court would have had no need to add the qualifying phrase "as a basis for adjudication" at the end of the sentence. We will not read *NBC Subsidiary* to contain such surplusage. (Cf. *Reno v. Baird* (1998) 18 Cal.4th 640, 658 [76 Cal.Rptr.2d 499, 957 P.2d 1333] [in construing statute, courts should give meaning to each word and avoid interpretation that would make any word surplusage].)

Although the court did not explain the qualifying phrase, it plainly describes something other than a document that is simply filed with the court. (Cf. *In re Harincar* (1946) 29 Cal.2d 403, 407 [176 P.2d 58] [using the phrase "proper basis for adjudication" in context of determining if out-of-state conviction could be used as a prior conviction in determining whether

---

[26] There is, we suppose, a third potential interpretation, under which there is access to discovery filed with the court when the filing party intends that it be used "as a basis for adjudication" of some matter other than a discovery motion. We reject that interpretation. Neither defendants nor the media suggest that the Supreme Court held that public access to court-filed documents was to be determined by an examination of the subjective intent of the filing party. We are aware of no authority so holding, and, obviously, such a standard requiring a determination of a litigant's intent would be cumbersome and would lead to uncertain and contradictory results.

the defendant was a habitual criminal].) We conclude that the first sentence of footnote 25 meant that a number of appellate courts had found a First Amendment right of access to documents filed in a civil case where they were submitted to the trial court for its consideration in deciding a substantive matter in that action. (See Black's Law Dict. (8th ed. 2004) p. 45, col. 1 [defining "adjudication" as "[t]he legal process of resolving a dispute; the process of judicially deciding a case"]; see also Merriam-Webster's Collegiate Dictionary (10th ed. 2001) p. 95 [defining "basis" as "the principal component of something . . . something on which something else is established or based"].) The five cases cited by the Supreme Court after this first sentence in footnote 25 support this conclusion.

In *Brown & Williamson v. F.T.C., supra,* 710 F.2d at page 1169 (*Brown & Willamson*), the trial court issued a blanket sealing order of all court filings by the defendant (Federal Trade Commission) and subsequently ordered the dismissal of the action. The Sixth Circuit Court of Appeals, citing *Richmond Newspapers, supra,* 448 U.S. 555, concluded that the First Amendment right of access applied to civil cases as well as criminal proceedings (*Brown & Williamson, supra,* at p. 1179) and that a blanket sealing order preventing the public from "ascertaining what evidence and records the District Court and this Court have relied upon in reaching our decisions" was improper. (*Id.* at p. 1181.) *Brown & Williamson* cannot be construed as holding that the mere filing of a document in a civil action, irrespective of whether it is part of the court's decisionmaking process, automatically makes it subject to public access.

In *Rushford v. New Yorker Magazine, Inc., supra,* 846 F.2d at page 250 (*Rushford*), the defendant in a defamation suit successfully moved for summary judgment and filed its entire motion under seal. Only three of the documents had been designated confidential under a protective order, and the defendant agreed on appeal that the motion (other than the three documents) could be unsealed. (*Id.* at p. 251.) The Fourth Circuit Court of Appeals held that the First Amendment right of access applied to these three documents, reasoning that "[o]nce the documents are made part of a dispositive motion, such as a summary judgment motion, they 'lose their status of being "raw fruits of discovery." ' [Citation.]" (*Rushford,* at p. 252.) In so holding, the court concluded that there was no distinction between a trial and a summary judgment because the latter "adjudicates substantive rights and serves as a substitute for a trial . . . ." (*Ibid.*) Thus, *Rushford*—contrary to its supporting the view that the right of access applies to all court-filed discovery material— suggests that access under the First Amendment applies to a narrower class of filed documents, i.e., those that are "filed in court as a basis for adjudication." (*NBC Subsidiary, supra,* 20 Cal.4th at p. 1208, fn. 25.)

In *Continental Illinois Securities, supra,* 732 F.2d at page 1305, the trial court relied on a report of a corporation's special litigation committee in deciding whether to terminate shareholder derivative claims that the committee had concluded were not in the corporation's best interests. After two newspaper publishing companies moved for access to the report, the trial court held that the report, which was one of the documents it specifically considered, should be open for inspection. (*Id.* at pp. 1306–1307.) The Seventh Circuit Court of Appeals upheld the unsealing order, concluding that the First Amendment presumption of access applied because the report was included in "the hearings held and evidence introduced in connection with Continental's motion to terminate," which motion the court identified as being a " 'hybrid summary judgment motion.' [Citation.]" (732 F.2d at p. 1309.) Thus, as was true with the court in *Rushford,* the *Continental Illinois Securities* court concluded that there was a right of access because the document for which confidentiality was sought was submitted in connection with a dispositive motion in the case. *Continental Illinois Securities* cannot be construed as finding a presumption of access generally to all court-filed documents in civil litigation. To the contrary, the court there directly noted that it "express[ed] no view as to whether the presumption of access applies to materials used in other pretrial stages." (*Continental Illinois Securities, supra,* at p. 1309, fn. 10.)

In *Grove Fresh Distributers, Inc. v. Everfresh Jucie Co., supra,* 24 F.3d at page 895 (*Grove Fresh*), the trial court acknowledged the right of access to its decisions and any documents relied on in making them, but sealed its entire file and refused a journalist group's request for access until the case was concluded. The Seventh Circuit Court of Appeals concluded that the right of public access under the circumstances was presumed and that the "access should be immediate and contemporaneous. [Citations.]" (*Id.* at p. 897.) Thus, the court in *Grove Fresh*—like the court in *Brown & Williamson*—addressed a blanket sealing order. Neither case can be construed as finding a generalized right of public access to all filed documents in civil litigation.

Lastly, in *Copley Press, supra,* 6 Cal.App.4th at page 109, the press sought access to the minute books of the clerks of six superior court judges. The appellate court—noting that "the minute books constitute the only easily accessible source of the daily chronology of court activities" (*ibid.*)—held that "the clerk's initial or 'rough' minutes constitute[d] a court record which should be available for public inspection." (*Id.* at p. 115.) In so holding, although the court observed that the First Amendment allows for "broad access rights to judicial hearings and records . . . both in criminal and civil cases" (6 Cal.App.4th at p. 111, fn. omitted), it did not address the issue of whether there was a general right of access to any document filed by any party in civil litigation.

The second sentence of footnote 25 cannot reasonably be construed as a statement by our high court that other courts have held that there is no First Amendment right of access to discovery materials unless they are used at trial or *filed with the court*. (See *NBC Subsidiary, supra,* 20 Cal.4th at p. 1209, fn. 25 ["By contrast, [other] decisions have held that the First Amendment does not compel public access to discovery materials that are neither used at trial nor submitted as a basis for adjudication."].) Had the court intended to say this, it could have easily said "nor filed with the court," rather than the language it did use at the end of the sentence, "nor submitted as a basis for adjudication" (*ibid.*). Again, the court would have had no need to use the qualifying phrase "as a basis for adjudication" if it had meant that case authority supported a right of access to discovery material once it became part of the court's file. The three cases cited by the court after the second sentence of footnote 25 support our conclusion.

In *Seattle Times Co. v. Rhinehart, supra,* 467 U.S. at page 27 (*Seattle Times*)—a defamation action brought by the spiritual leader of a small religious group and the group itself—the defendant newspapers challenged a discovery order; that order permitted discovery from the plaintiffs that included sensitive information such as membership and identities of contributors under a protective order that prevented the defendants from publishing or using the information except for preparation and trial of the case. The central issue as framed by the highest court was "whether a litigant's freedom comprehends the right to disseminate information that he has obtained pursuant to a court order that both granted him access to that information and placed restraints on the way in which the information might be used." (*Id.* at p. 32.) The *Seattle Times* court held that "restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." (*Id.* at p. 33.) Accordingly, the Supreme Court concluded that—given the breadth of the discovery allowed, the fact that much civil discovery may have had little relevance to the underlying case, and the large potential for abuse (including delay, expense, and release of private information pertaining to litigants and third parties (*id.* at pp. 34–36))—the protective order, which was "limited to the context of pretrial civil discovery, and [did] not restrict the dissemination of the information if gained from other sources, [did] not offend the First Amendment." (*Id.* at p. 37, fn. omitted.) Thus, *NBC Subsidiary*'s citation of *Seattle Times* suggests that the California Supreme Court recognized a clear distinction between court-filed documents that are used at trial or to otherwise adjudicate a controversy and those that serve no such function but are merely part of the pretrial discovery process.

The *NBC Subsidiary* court again cited *Continental Illinois Securities, supra,* 732 F.2d 1302, after the second sentence of footnote 25 for the proposition that there is no public access to discovery materials that are not used at trial

or for adjudicatory purposes. (*NBC Subsidiary, supra,* 20 Cal.4th at p. 1209, fn. 25.) The Supreme Court identified a footnote in the opinion in which the Seventh Circuit stated, inter alia, that the District of Columbia Circuit had upheld a trial court's order sealing deposition transcripts, "[t]he panel [holding] that the constitutional presumption of access does not apply to 'discovery materials never used at trial.' [Citation.]" (*Continental Illinois Securities, supra,* 732 F.2d at p. 1309, fn. 11, quoting *Tavoulareas v. Washington Post Co.* (D.C.Cir. 1984) 233 U.S. App.D.C. 126 [724 F.2d 1010, 1017], opn. vacated and rehearing en banc granted (Mar. 15, 1984), sub. opn. (D.C.Cir. 1984) 238 U.S. App.D.C. 23 [737 F.2d 1170].)[27]

In the third case cited by the California Supreme Court after the second sentence of footnote 25 (*NBC Subsidiary, supra,* 20 Cal.4th at p. 1209, fn. 25), the parties moved unsuccessfully to seal their appellate briefs in their entirety. (*Matter of Krynicki, supra,* 983 F.2d 74 (order by Easterbrook, J.) (*Krynicki*).) Although he denied the motions, concluding that there was a public right of access to the briefs that would form the basis of the appellate decision, Judge Easterbrook made a clear distinction between discovery material produced pursuant to a protective order and documents used at trial or otherwise as a basis for adjudication. At pages 75 to 76 of *Krynicki, supra,* 983 F.2d 74—the portion of the opinion cited by *NBC Subsidiary*—Judge Easterbrook reasoned: "Protective orders entered during discovery in civil cases have a similar justification, and similar limits. Confidentiality while information is being gathered not only protects trade secrets but also promotes disclosure: parties having arguable grounds to resist discovery are more likely to turn over their information if they know that the audience is limited and the court will entertain arguments focused on vital knowledge that a party wants to use later. [Citation.] Information that is used at trial or otherwise becomes the basis of decision enters the public record. [Citation.] [¶] Doctrines that initially seem to support secrecy thus turn out to be about the timing of disclosure. [Citations.] Secrecy persists only if the court does not use the information to reach a decision on the merits. [Citation.]"[28]

---

[27] In *Tavoulareas v. Washington Post Co., supra,* 737 F.2d at page 1172, the District of Columbia Circuit remanded the case to the district court for it to reconsider its sealing order in light of the then recently decided case of *Seattle Times, supra,* 467 U.S. 20, noting that the trial court should have had the opportunity to decide whether there was good cause for issuing a protective order "free from [the trial court's prior] erroneously imposed constitutional constraints." (*Tavoulareas, supra,* at p. 1172.) The trial court on remand determined that the party having previously produced the discovery had established good cause to seal most of the records, where the discovery (1) had been previously produced in reliance on a protective order and (2) had never been used at trial. (*Tavoulareas v. Washington Post Co.* (D.D.C. 1986) 111 F.R.D. 653.)

[28] In addition to the three cases cited after the second sentence of footnote 25, the California Supreme Court also cited the following: "Fenner & Koley, *supra,* 16 Harv. C.R.-C.L. L.Rev. at p. 434 ['The presumption of access does not apply until the documents or records of such

Finally, reading the two sentences of footnote 25 in *NBC Subsidiary* together, one cannot reasonably conclude that the Supreme Court held that the First Amendment right of access adheres inevitably once discovery material is filed in civil litigation, irrespective of the circumstances under which it is filed. Were that a proper interpretation of *NBC Subsidiary*, it would have been unnecessary for the court to have juxtaposed the proposition that there is a right of access to "civil litigation documents filed in court as a basis for adjudication" (*NBC Subsidiary, supra,* 20 Cal.4th at p. 1208, fn. 25) with the statement that "the First Amendment does not compel public access to discovery materials that are neither used at trial nor submitted as a basis for adjudication." (*Id.* at p. 1209, fn. 25.)

### 3. *Context of* NBC Subsidiary *decision*

Our conclusion that the Supreme Court held that discovery material does not automatically become subject to a presumptive right of access once it is filed in civil litigation is also supported by the context of the *NBC Subsidiary* decision. It is important to note that the Supreme Court was addressing the constitutionality of the denial of public access to civil *proceedings*, not to court filings. Indeed, *NBC Subsidiary* addressed a fairly extreme exclusion order that closed portions of trial proceedings. A major focus of the Supreme Court was whether the First Amendment provided a right of access generally to civil trials, where the nation's highest court had previously addressed only whether there was a constitutional right of access to criminal proceedings. (See *NBC Subsidiary, supra,* 20 Cal.4th at pp. 1197–1212.) It addressed only in passing the subject of the sealing of civil litigation documents. (*Id.* at pp. 1208–1209, fn. 25.)

From its focus on the constitutionality of closing a portion of a civil trial, the court in *NBC Subsidiary* did not make a sweeping pronouncement that

---

proceedings are filed with the court or are used at a judicial proceeding'].)" (*NBC Subsidiary, supra,* 20 Cal.4th at p. 1209, fn. 25.) The media argue that this citation supports their position that the filing of discovery in civil litigation, regardless of whether it is used in any fashion, results in its becoming presumptively subject to public access. The court below agreed with this position. We reject the media's contention. The focus of the article—written three years before the Supreme Court decided *Seattle Times, supra,* 467 U.S. 20—was on Supreme Court decisions, including *Richmond Newspapers, supra,* 448 U.S. 555, and on the extent to which the right of access should be extended to civil trials and other "outcome determinative" proceedings in civil litigation such as summary judgment, dismissal, and in limine motions (Fenner & Koley, *supra,* at p. 435 & fn. 105); it contained no discussion concerning issues pertaining to court-filed civil discovery. Furthermore, in the context of the remainder of footnote 25 of the *NBC Subsidiary* decision, it would make no sense that the court was citing the article in support of a view that there is a presumptive right of access to all court-filed discovery; such a view would directly contradict the second sentence of the court's footnote, i.e., that "decisions have held that the First Amendment does not compel public access to discovery materials that are neither used at trial nor submitted as a basis for adjudication." (*NBC Subsidiary, supra,* 20 Cal.4th at p. 1209, fn. 25.)

there was a presumption of a right of access under the First Amendment to *all* proceedings. Rather, it concluded that "it is clear today that *substantive* courtroom proceedings in ordinary civil cases are 'presumptively open'. . . ." (*NBC Subsidiary, supra,* 20 Cal.4th at p. 1217, italics added; see also *ibid.* ["*before substantive* courtroom proceedings are closed or transcripts are ordered sealed, a trial court must hold a hearing" and make factual findings to support the order (italics added, fn. omitted)].) Indeed, the court illustrated its finding that there was a constitutional right of access to substantive civil proceedings—which necessarily implies that the right is not coextensive with *all* proceedings—by citation of federal authorities that found the existence of such a right in the context of civil trials, civil contempt proceedings, preliminary injunction matters, judicial disciplinary hearings, and class action hearings. (*Id.* at p. 1208.)

Thus, viewing the Supreme Court's decision in *NBC Subsidiary* in its entirety, we must conclude that it cannot be construed as finding a presumption of public access to all court-filed documents, the position advanced by the media. Indeed, an interpretation of *NBC Subsidiary* as creating a First Amendment presumptive right to all documents filed in civil litigation, regardless of the circumstances of their filing, would conceivably result in broader access rights to civil court filings than to civil proceedings. We do not construe *NBC Subsidiary* to have created such an anomaly.

### 4. *Principles and policy considerations regarding public access*

■ The Supreme Court in *NBC Subsidiary,* drawing upon prior United States Supreme Court cases and other authorities, identified several policy justifications supporting the constitutional right of access to the courts. The court summarized these rationales as follows: "[P]ublic access plays an important and specific structural role in the conduct of such proceedings. Public access to civil proceedings serves to (i) demonstrate that justice is meted out fairly, thereby promoting public confidence in such governmental proceedings; (ii) provide a means by which citizens scrutinize and check the use and possible abuse of judicial power; and (iii) enhance the truthfinding function of the proceeding. [Citation.]" (*NBC Subsidiary, supra,* 20 Cal.4th at p. 1219.)

It cannot be said that public access to *any* court-filed civil discovery documents—regardless of their relevance to the issues in the case, the circumstances of their filing, or the extent of their use in the proceedings— promotes any or all of these three objectives. Public access to a discovery document that is not considered or relied on by the court in adjudicating any substantive controversy does nothing to (1) establish the fairness of

the proceedings, (2) increase public confidence in the judicial process, (3) provide useful scrutiny of the performance of judicial functions, or (4) improve the quality of the truth-finding process.

 The Supreme Court in *NBC Subsidiary* explained that Justice Brennan, in his concurring opinion in the *Richmond Newspapers* case, enunciated a two-part test utilized by the United States Supreme Court in several later decisions involving public access to criminal proceedings.[29] "Justice Brennan elaborated on two principles, . . . that may be used to confirm the existence and scope of a right of access: (i) historical tradition, and (ii) the specific structural value of access in the circumstances. 'First, the case for a right of access has special force when drawn from an enduring and vital tradition of public entree to particular proceedings or information. [Citation.] Such a tradition commands respect in part because the Constitution carries the gloss of history. More importantly, a tradition of accessibility implies the favorable judgment of experience. Second, the value of access must be measured in specifics. Analysis is not advanced by rhetorical statements that all information bears upon public issues; what is crucial in individual cases is whether access to a particular government process is important in terms of that very process.' [Citation.]" (*NBC Subsidiary*, *supra*, 20 Cal.4th at p. 1201, quoting *Richmond Newspapers*, *supra*, 448 U.S. at p. 589 (conc. opn. of Brennan, J.).)

There is no "historical tradition" (*NBC Subsidiary*, *supra*, 20 Cal.4th at p. 1201) supporting a right of access to discovery materials exchanged between civil litigants. As our highest court has noted, "pretrial depositions and interrogatories are not public components of a civil trial. Such proceedings were not open to the public at common law, [citation], and, in general, they are conducted in private as a matter of modern practice. [Citations.]" (*Seattle Times*, *supra*, 467 U.S. at p. 33, fn. omitted; see also *H.B. Fuller*, *supra*, 151 Cal.App.4th at p. 893 [discovery is "a process that is largely a modern invention and has never been conceived as open to the public"].)

Furthermore, there is little or no "specific structural value of access in the circumstances" (*NBC Subsidiary*, *supra*, 20 Cal.4th at p. 1201) presented as a general matter with respect to civil discovery. The concept of relevance in the discovery context is, of course, broader than evidence that is admissible at trial (*Davies v. Superior Court* (1984) 36 Cal.3d 291, 301 [204 Cal.Rptr. 154, 682 P.2d 349]), and litigants may obtain discovery "if the matter either is

---

[29] Those later decisions utilizing Justice Brennan's two-part test include the following three cases, each of which was discussed at length in the *NBC Subsidiary* decision: *Press-Enterprise Co. v. Superior Court* (1986) 478 U.S. 1 [92 L.Ed.2d 1, 106 S.Ct. 2735]; *Press-Enterprise Co. v. Superior Court of Cal.* (1984) 464 U.S. 501 [78 L.Ed.2d 629, 104 S.Ct. 819]; and *Globe Newspaper Co. v. Superior Court* (1982) 457 U.S. 596 [73 L.Ed.2d 248, 102 S.Ct. 2613].

itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence." (Code Civ. Proc., § 2017.010.) Any doubts regarding relevance are generally resolved in favor of allowing the discovery. (*Colonial Life & Accident Ins. Co. v. Superior Court* (1982) 31 Cal.3d 785, 790 [183 Cal.Rptr. 810, 647 P.2d 86].) Because of the breadth of the standard of discovery relevance, "[m]uch of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action." (*Seattle Times, supra,* 467 U.S. at p. 33.) The second principle enunciated by Justice Brennan thus does not confirm the existence of a presumptive right of access to all discovery material that is filed with the court—regardless of its relevance to the issues in the case or the use (or lack of use) to which it is put in the litigation.

 ■ Contrary to any structural utility associated with presumed access to all court-filed discovery materials, application of such a presumption strongly suggests negative consequences upon civil discovery and the court's powers of supervision over its cases. As Justice Powell noted, "[discovery] processes . . . are a matter of legislative grace . . . [citation] . . . [and] continued court control over the discovered information does not raise the same specter of government censorship that such control might suggest in other situations." (*Seattle Times, supra,* 467 U.S. at p. 32.) As our high court has reiterated, California's discovery statutes " 'must be construed liberally in favor of disclosure.' [Citation.]" (*Emerson Electric Co. v. Superior Court* (1997) 16 Cal.4th 1101, 1107 [68 Cal.Rptr.2d 883, 946 P.2d 841], quoting *Greyhound Corp. v. Superior Court* (1961) 56 Cal.2d 355, 377 [15 Cal.Rptr. 90, 364 P.2d 266].) Because "[l]iberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes," there are serious risks of abuse, not only in terms of exorbitant costs associated with it, but the exposure of private matters concerning both litigants and third parties. (*Seattle Times, supra,* at p. 34.)

Parties to civil litigation, recognizing the broad policies favoring discovery, often choose to avoid costly and time-consuming motion practice by entering into stipulations for protective orders that permit production but limit disclosure and use of discovered information deemed by the producing party to contain confidential, proprietary, and/or private information. They thereby defer or obviate the need for specific court determination as to the propriety of designating materials confidential[30] unless and until that designation is challenged. (*Chicago Tribune Co. v. Bridgestone/Firestone, Inc.* (11th Cir.

---

[30] For instance, a party responding to document requests may move the court for a protective order, upon a showing of good cause, "to protect any party or other natural person or organization from unwarranted annoyance, embarrassment, or oppression, or undue burden and expense. This protective order may include, but is not limited to, one or more of the following directions: [¶] (1) That all or some of the items or categories of items in the inspection demand need not be produced or made available at all. [¶] (2) That the time

2001) 263 F.3d 1304, 1307 (*Chicago Tribune*); see also *Krynicki, supra,* 983 F.2d at p. 75 ["parties having arguable grounds to resist discovery are more likely to turn over their information if they know that the audience is limited . . ."].) Were we to find a presumed right of access to any discovery material filed with the court—irrespective of whether it has been previously designated confidential pursuant to a protective order, or has been submitted in connection with trial or a dispositive motion—we would invite myriad discovery skirmishes wherever a party is faced with producing material in discovery that it considers confidential. We are not unmindful of the ever-increasing costs of civil litigation and involvement of courts in the policing of all types of pretrial matters; we have no desire to add to those litigation costs and court burdens by creating unnecessary disincentives to the resolution of discovery controversies. (See *Fairmont Ins. Co. v. Superior Court* (2000) 22 Cal.4th 245, 253–254 [92 Cal.Rptr.2d 70, 991 P.2d 156] ["A central purpose of the Discovery Act was to keep the trial courts out of the business of refereeing day-to-day discovery by requiring parties to conduct discovery and resolve disputes with minimal judicial involvement."].)

Although we are not bound by them, we acknowledge that a number of federal cases have similarly concluded that the First Amendment right of access does not apply across the board to all court-filed discovery materials. In *Chicago Tribune, supra,* 263 F.3d at page 1309, the Eleventh District Court of Appeals addressed arguments of representatives of the press that there were both common law and First Amendment rights of access under which they should be afforded access to documents produced by the defendant and designated confidential pursuant to a protective order entered early in the litigation. After observing that a constitutional presumption of access did not apply to "[m]aterials merely gathered as a result of the civil discovery process" (*id.* at p. 1310) and that "[p]ublic disclosure of discovery material is subject to the discretion of the trial court and the federal rules that circumscribe that discretion" (*ibid.*), the court concluded further that only "discovery material filed in connection with pretrial motions that require judicial resolution of the merits is subject to the common-law right . . . [of access]." (*Id.* at p. 1312.)

Likewise, in *Phillips, supra,* 307 F.3d 1206, the Ninth Circuit Court of Appeals rejected the newspaper's argument that there was a strong presumption of access to a confidential settlement that had been produced pursuant to

---

specified in Section 2030.260 to respond to the set of inspection demands, or to a particular item or category in the set, be extended. [¶] (3) That the place of production be other than that specified in the inspection demand. [¶] (4) That the inspection be made only on specified terms and conditions. [¶] (5) That a trade secret or other confidential research, development, or commercial information not be disclosed, or be disclosed only to specified persons or only in a specified way. [¶] (6) That the items produced be sealed and thereafter opened only on order of the court." (Code Civ. Proc., § 2031.060, subd. (b).)

a protective order and later filed under seal in connection with a motion for sanctions that was never ruled upon. The court concluded that applying such a presumption to documents produced under a protective order "would surely undermine, and possibly eviscerate, the broad power of the district court to fashion protective orders." (*Id.* at p. 1213.) The court therefore concluded that the presumption of access did not apply "when a party attaches a sealed discovery document to a nondispositive motion." (*Ibid.*; see also *U.S. v. Amodeo* (2d Cir. 1995) 71 F.3d 1044, 1050 [no presumed public access to documents exchanged in discovery that are not used for adjudication]; *Grove Fresh, supra,* 24 F.3d at pp. 897–898 ["until admitted into the record, material uncovered during pretrial discovery is ordinarily not within the scope of press access"]; *Littlejohn v. BIC Corp.* (3d Cir. 1988) 851 F.2d 673, 680, fn. 14 [no presumptive right of access for "document[s] never specifically referred to at trial or admitted into evidence"].)

Therefore, as we recently observed, public access to discovery materials that are not part of trial proceedings or filed in connection with a motion on a substantive issue "is favored neither by tradition nor by functional analysis." (*H.B. Fuller, supra,* 151 Cal.App.4th at p. 893.) The policy objectives and standards concerning access to judicial proceedings identified in *NBC Subsidiary* thus support our conclusion that there is no generalized presumption of access to all court-filed discovery material.

C. *Application of* NBC Subsidiary *to Challenged Order*

In applying the principles of *NBC Subsidiary* here, we first note that the text of the sealed records rules neither expressly includes nor excludes filed discovery material from the rules' parameters under the circumstances presented here. The exhibits to the Complaint are not "discovery motions and records filed or lodged in connection with discovery motions or proceedings," a category not embraced under the rules. (Rule 2.550(a)(3).) But the Complaint's exhibits are also not "discovery materials that are used at trial or submitted as a basis for adjudication of matters other than discovery motions or proceedings," a category that is expressly within the ambit of the sealed records rules. (*Ibid.*)

The comments of the advisory committee, however, make it clear that the sealed records rules do not apply to the situation here: "The sealed records rules also do not apply to discovery proceedings, motions, and materials that are not used at trial or submitted to the court as a basis for adjudication. (See *NBC Subsidiary, supra,* 20 Cal.4th at pp. 1208–1209, fn. 25.)" (Advisory Com. com., rule 2.550.)[31] We derive the intent of the Judicial Council from

---

[31] We acknowledge that the quoted language from the advisory committee does not precisely track the language in the second sentence of footnote 25. (*NBC Subsidiary, supra,* 20 Cal.4th at p. 1209, fn. 25 ["[T]he First Amendment does not compel public access to discovery materials

the comments of its advisory committee. (See *Providian*, *supra*, 96 Cal.App.4th at p. 298, fn. 3 [relying on advisory committee comments to conclude that sealed records rules were adopted to provide compliance with *NBC Subsidiary*]; *In re Markaus V.* (1989) 211 Cal.App.3d 1331, 1335–1336 [260 Cal.Rptr. 126] [citing advisory committee comment in support of court's interpretation of former rule 39, concerning time for filing appeal from juvenile court decision].)

■ The media urge that, as a result of the California electorate's passage of Proposition 59 in November 2004, which added subdivision (b) to article I, section 3 of the California Constitution, we must construe the rules in a manner favoring a right of access to court filings. We agree with that proposition as a general matter, as have other courts. (See, e.g., *Savaglio*, *supra*, 149 Cal.App.4th at pp. 597, 600; *Burkle*, *supra*, 135 Cal.App.4th at p. 1059.) Under subdivision (b)(1) of article I, section 3, "[t]he people have the right of access to information concerning the conduct of the people's business, and, therefore, the meetings of public bodies and the writings of public officials and agencies shall be open to public scrutiny." "A statute, court rule, or other authority, including those in effect on the effective date of this subdivision, shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access. . . . " (Cal. Const., art. I, § 3, subd. (b)(2).)

Our conclusion that the sealed records rules—read consistently with language in the rules' progenitor, *NBC Subsidiary*—do not apply to discovery materials that are not used at trial or submitted as a basis for adjudication is not altered by these constitutionally mandated rules of construction. While we will liberally construe the rules in furtherance of the public's right of access, article I, section 3, subdivision (b) of the California Constitution does not sanction an interpretation of the sealed records rules that is unreasonable. (Cf. *Alvarez v. Superior Court* (2007) 154 Cal.App.4th 642, 657 [64 Cal.Rptr.3d 854] "To the extent Proposition 59 requires us to liberally construe [Pen. Code, §] 938.1 to further the people's right of access to grand jury transcripts [citation], we have no power to disregard the plain language of the statute . . . ."].) Absent a clear directive from the Judicial Council that the rules are intended to create a presumption of access to a larger class of court-filed documents than the class enunciated in *NBC Subsidiary* and in the rules themselves, we will not so construe them.

---

that are neither used at trial nor submitted as a basis for adjudication."].) But as we have concluded, the clear meaning of the Supreme Court's language is consistent with the advisory committee's comment enunciating the holding of *NBC Subsidiary*.

Moreover, the appellate decisions cited by the media that construe and apply the sealed records rules do not compel a contrary holding. We have previously discussed *Savaglio, supra,* 149 Cal.App.4th 588, at some length in connection with the media's claim of waiver. (See pt. VI.A.2., *ante.*) *Savaglio* involved the wholesale sealing of court records in connection with *two* dispositive motions (i.e., class certification and summary adjudication motions). Thus, the documents were clearly submitted as a basis for adjudication within the meaning of *NBC Subsidiary* and the rules, and the appellate court did not hold that discovery material filed under the circumstances presented here is subject to a presumptive right of access.

In *Burkle, supra,* 135 Cal.App.4th at page 1045, the court concluded that the presumptive right of access to civil litigation and court records also applied to dissolution proceedings. (*Id.* at pp. 1055–1057.) After so concluding, it addressed the constitutionality of Family Code section 2024.6, which permitted the broad sealing of court records in dissolution proceedings, even those used at trial or submitted as a basis for adjudication, holding that the statute was unconstitutional on its face. (*Burkle, supra,* at pp. 1063–1070.) The case was not concerned with the sealing of discovery material previously marked confidential, and the court did not consider the much narrower issue presented here, i.e., whether court-filed discovery documents that are designated confidential pursuant to a protective order are subject to a presumptive right of access, even if they are *not* used at trial or submitted as a basis for adjudication.

*Universal City Studios, Inc. v. Superior Court* (2003) 110 Cal.App.4th 1273 [2 Cal.Rptr.3d 484] (*Universal City Studios*) concerned the trial court's denial of the defendant's motion to seal records and a subsequent challenge of that order. In connection with that challenge, the defendant conditionally lodged documents under seal in the appellate court and brought a motion to seal them pursuant to rule 8.160.[32] (*Universal City Studios, supra,* at p. 1275.) That rule, inter alia, permits the appellate court's sealing of records not filed in the trial court only upon the same specific findings that are required under rule 2.550(d) and (e) regarding the sealing of records in the trial court. (Rule 8.160(e)(6).) The parties there *agreed* that rule 8.160—including the strong showing required under the rule of the party requesting sealing to overcome the presumption of public access—applied to the records the defendant was attempting to seal. (*Universal City Studios, supra,* at p. 1280.)

---

[32] At the time the case was decided, the applicable rule for sealing appellate court records was former rule 12.5, which was amended and renumbered rule 8.160, effective January 1, 2007. Rule 8.160 does not differ materially from its predecessor and we will therefore for simplicity use the current rule number to refer to the rule concerning the sealing of appellate court records.

Lastly, the defendant in *Huffy Corp. v. Superior Court* (2003) 112 Cal.App.4th 97, 98–99 [4 Cal.Rptr.3d 823], in conjunction with its petition for writ of mandate challenging the trial court's ruling on its cross-motion for summary adjudication in a complex insurance coverage dispute, filed nearly 2,600 pages of documents under seal. The overbreadth of the defendant's sealing efforts was underscored by the fact that the documents included copies of out-of-state court opinions, points and authorities, and proofs of service. (*Id.* at p. 102.) The appellate court in *Huffy Corp.* addressed the trial court's sealing order, which contained no findings as required by the sealed records rules and which resulted in the wholesale sealing of records, including many that were obviously not confidential. (*Id.* at p. 105.) There was no contention by the parties that rule 8.160 was inapplicable to the sealing procedure sought by the defendant. Thus, as was the case in *Universal City Studios*, the focus of the opinion was on whether the party seeking sealing had met its heavy burden of overcoming the presumption of public access. (*Huffy Corp., supra,* at pp. 105–109.)

■ In this instance, contrary to the media's assertion, plaintiffs' mere act of attaching the discovery materials as exhibits to the Complaint did not result in them being submitted as a basis for adjudication within the ambit of the rules. While the importance of a complaint in framing the claims and issues presented in civil litigation cannot be downplayed, we disagree that any material attached to it—such as the discovery material designated confidential pursuant to a duly entered protective order here—necessarily is "submitted as a basis for adjudication." The pleadings, including complaints, are not typically evidentiary matters that are submitted to a jury in adjudicating a controversy. (Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2007) ¶ 15:51, p. 15-9.)

■ Further, the Complaint's exhibits did not become a basis for adjudication as a result of the trial court's order sustaining defendants' demurrer on the basis that plaintiffs lacked standing to sue. A demurrer will lie in an instance in which the plaintiff lacks standing. (*PacLink Communications Internat., Inc. v. Superior Court* (2001) 90 Cal.App.4th 958, 964 [109 Cal.Rptr.2d 436] [demurrer challenged limited liability company members' standing where wrong was one suffered by company itself].) The issue of standing to sue is a threshold legal issue to be decided by the court. (*Bozung v. Local Agency Formation Com.* (1975) 13 Cal.3d 263, 287, fn. 32 [118 Cal.Rptr. 249, 529 P.2d 1017]; *Jauregi v. Superior Court* (1999) 72 Cal.App.4th 931, 939 [85 Cal.Rptr.2d 553].) Here, the principal issues relevant to the court's decision on the demurrer were whether the court should (1) apply California or Delaware law; (2) find that the continuous

ownership doctrine of the state of Delaware (the state of incorporation of Mercury), under which a shareholder loses standing to bring a derivative suit if he or she is divested of stock as a result of a merger (*Lewis v. Anderson* (Del. 1984) 477 A.2d 1040, 1046), precluded plaintiffs from proceeding; (3) conclude (assuming California law applied) that plaintiffs lacked standing under the continuous ownership doctrine (*Heckman v. Ahmanson* (1985) 168 Cal.App.3d 119, 130 [214 Cal.Rptr. 177]); and (4) stay the action to await the California Supreme Court's decision in a case presently pending before it (see *Grosset v. Wenaas* (2005) 133 Cal.App.4th 710 [35 Cal.Rptr.3d 58], review granted Nov. 29, 2005, S139285).[33] It is obvious both from this synopsis and a review of the Complaint that the demurrer in no sense dealt with the underlying factual claims of stock options backdating alleged in the Complaint or concerned the exhibits appended to that pleading. Therefore, we conclude that the Complaint's exhibits were not submitted as a basis for adjudication in connection with the court's disposition of defendants' demurrer.[34]

We stress that the issue we decide here is a rather narrow one: the applicability of the sealed records rules to discovery material designated confidential pursuant to a protective order and later filed with the court and not used at trial or submitted as a basis for adjudication. The case—by virtue of the unusual procedural path it took after the trial court's order on January 24, 2007—does not concern the sealing of the Complaint or the propriety of the order unsealing the Complaint itself. Our holding is not meant to encourage the filing of complaints or other pleadings under seal, nor is it intended to suggest that pleadings should not, as a general rule, be open to public inspection.[35]

---

[33] We of course express no opinion concerning the correctness of the trial court's order sustaining defendants' demurrer to the Complaint without leave to amend, the judgment entered on that order being the subject of a separate appellate proceeding pending in this court. (See fn. 9, *ante*.)

[34] In so concluding, we acknowledge—as do defendants—that there may exist instances in which an attachment to a complaint to which a demurrer is interposed may constitute a document submitted as a basis for adjudication and thereby fall within the presumption of public access discussed in *NBC Subsidiary*. For instance, a challenged complaint in which a contract is attached and in which the demurrer concerns the viability of the contract would probably pose such a case. Under the circumstances here, however, where the exhibits attached to the Complaint have no bearing on the dispositive issues in the demurrer, there is no such presumed right of public access.

[35] We observe that in this instance, the Complaint's exhibits appear to have been entirely unnecessary to the pleading and that the sealing controversy could have been avoided by either a stipulation or an order amending the Complaint to strike the exhibits and to strike any quotes from, or references to them. The required contents of a complaint are "[a] statement of the facts constituting the cause of action, *in ordinary and concise language*[, and] [¶] . . . [a] demand for judgment for the relief to which the pleader claims to be entitled." (Code Civ. Proc., § 425.10, subd. (a)(1), (2), italics added.) It is obvious from a review of the 35-page Complaint

We thus conclude that the trial court erred when it held that there was a presumption of public access to the Complaint's exhibits, where they consisted of discovery material that was not admitted at trial or used as a basis of the court's adjudication of a substantive matter. The sealed records rules did not apply to these documents. In so holding, we echo our colleague, Justice Gilbert of the Second District Court of Appeal, in saying that "[w]e do not take lightly the public's right of access to court proceedings and the interests served by public access." (*People v. Jackson, supra*, 128 Cal.App.4th at p. 1028.) We are mindful of the media's contention that the issue of stock option backdating is one of current importance about which the public has a strong interest in being kept informed. (See *In re CNET Networks, Inc.* (N.D.Cal. 2007) 483 F.Supp.2d 947, 949 [noting that "stock options backdating has been on page one of the financial press" since publication of initial articles on the subject in March 2006 by the Wall Street Journal].) While that may be true, there are many other issues of public importance that are current subjects of civil litigation. The claim that the subject of the litigation may be newsworthy—in effect, an argument that the public has a generalized right to be informed—cannot serve as a substitute for a showing of specific utility of public access to the information. (See *NBC Subsidiary, supra*, 20 Cal.4th at p. 1201.) Otherwise, we would ignore Justice Brennan's cautionary words that a particularized showing of utility may not be replaced with "rhetorical statements that all information bears upon public issues . . . . " (*Richmond Newspapers, supra*, 448 U.S. at p. 589 (conc. opn. of Brennan, J.).)[36]

D. *Further Proceedings*

Because the court based its order on the erroneous legal conclusion that the filed discovery material was governed by the sealed records rules, it must be reversed. Beyond defendants' statement that upon reversal the records should remain under seal, the parties do not address the issue of what should transpire

---

and attached 48 pages of exhibits that the pleading contains far more than simply an allegation of the ultimate facts "in ordinary and concise language" setting forth the cause of action. The Complaint almost certainly contains "irrelevant, . . . or improper matter" (Code Civ. Proc., § 436, subd. (a)), and/or was a "pleading not drawn or filed in conformity with the laws of this state . . ." (Code Civ. Proc., § 436, subd. (b)). Therefore—without intending to be overly critical of plaintiffs—the attached exhibits, as well as the quotes and references to them in the body of the Complaint, could have been stricken by the court either upon a motion by defendant or on its own motion. (Code Civ. Proc., § 436; see also *Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1281 [45 Cal.Rptr.3d 222] [under Code Civ. Proc., § 436, "court at any time may, in its discretion, strike portions of a complaint that are irrelevant, improper, or not drawn in conformity with the law . . ."].)

[36] Because we have concluded that the court erroneously applied the sealed records rules to the question of the media's motion to unseal records, we do not address the remaining contentions of the parties concerning whether the court erred in concluding that defendant and Mercury established an overriding interest under the rules that warranted the continued sealing of records.

in the event the order is reversed. It is clear to us, however, that the sealing controversy should not necessarily be concluded upon issuance of remittitur.

A simple reversal with instructions that the documents should remain under seal would suggest, in theory, an outcome in which documents would remain permanently under court seal without any justification other than the fact that a party producing them in discovery (in this case, Mercury) had originally designated them confidential pursuant to a stipulated protective order. In this instance, based upon our in camera review of the Complaint's exhibits, we are aware of at least one document—exhibit 2, a reprinted newspaper article—for which any claim of confidentiality appears, to say the least, dubious. The stipulated protective order itself does not provide that the designation of a document as confidential is the final word.[37] Instead, the order (in paragraph 11) specifies a mechanism for challenging a confidentiality designation made by a party or third party producing discovery material. It states that "[i]f a party contends that any material is not entitled to confidential treatment," it may so notify the other party or nonparty responsible for the confidentiality designation of its position. If, after an attempt to resolve the controversy informally, the disagreement remains, the designating party or third party, within 25 days of termination of the meet-and-confer discussions, may "apply to the Court for an order designating the material as confidential. The party or non[]party seeking the order has the burden of establishing that the document is entitled to protection."

From the above recital of the mechanism for challenging a confidentiality designation, one problem with its application in this instance is readily apparent. The stipulated protective order allows a *party* to challenge such a designation. It does not specifically afford a stranger to the litigation—in this case, a representative of the press—the opportunity to challenge a confidentiality designation.

██ The court's authority to control discovery, including its right to issue, modify, or vacate protective orders, derives from the Civil Discovery Act, Code of Civil Procedure section 2016.010 et seq. (See, e.g., Code Civ. Proc., §§ 2017.010 [authorizing discovery by any party, "[u]nless otherwise limited by order of the court in accordance with this title"], 2017.020, subd. (a) [authorizing court's issuance of protective order to "limit the scope of discovery if it determines that the burden, expense, or intrusiveness of that

---

[37] The protective order at paragraph 5 provides that "[a]bsent a specific order by the Court, once designated as 'Confidential,' such Confidential Discovery Material and any information contained therein or derived therefrom shall not be disclosed except as provided herein."

discovery clearly outweighs the likelihood that the information sought will lead to the discovery of admissible evidence"], 2025.420, subd. (b) [authorizing court to issue protective order to protect deponent "from unwarranted annoyance, embarrassment, or oppression, or undue burden and expense"], 2031.060, subd. (b) [authorizing court to protect party to whom inspection demand is propounded "from unwarranted annoyance, embarrassment, or oppression, or undue burden and expense"], 2033.080, subd. (b) [authorizing court to protect party to whom requests for admissions have been made "from unwarranted annoyance, embarrassment, oppression, or undue burden and expense"].) In the case of the production of documents, the court's power, upon a showing of good cause, to "make any order that justice requires to protect [a responding party] from unwarranted annoyance, embarrassment, or oppression, or undue burden and expense" includes the issuance of an order "[t]hat the items produced be sealed and thereafter opened only on order of the court." (Code Civ. Proc., § 2031.060, subd. (b)(6).)

Here, as a result of the parties' having followed the procedure specified in the stipulated protective order, documents produced by Mercury that it designated confidential were filed with the court under seal. The court was specifically empowered to address Mercury's designation, both under the protective order and under the Civil Discovery Act, from which the initial justification for the entry of the protective order derived. We believe that it is appropriate under the circumstances presented here to afford the media the opportunity to challenge the confidentiality designation of discovery material that is filed under seal, where the filing is not embraced by the sealed records rules. By so holding, we construe the provisions of the California Civil Discovery Act, and specifically Code of Civil Procedure section 2031.060, both broadly in furtherance of a right of public access and narrowly to the extent they limit such access right. (Cal. Const., art. I, § 3, subd. (b)(2).)

Therefore, on remand, the media shall be afforded the opportunity to challenge Mercury's confidentiality designations with respect to the exhibits to the Complaint by following the procedures identified in paragraph 11 of the stipulated protective order. In the event the media makes such a challenge and the meet-and-confer efforts required under the protective order prove unsuccessful, Mercury and/or defendants may make application to the court within 25 days after the termination of the meet-and-confer discussions to designate any or all of the exhibits to the Complaint confidential. Said application shall include a specific showing establishing that the documents are entitled to confidential treatment.

## DISPOSITION

The order unsealing the exhibits to the Complaint is reversed and the matter is remanded for further proceedings that are consistent with this opinion. The parties shall bear their own costs on appeal.

Premo, Acting P. J., and Elia, J., concurred.