Filed 3/24/25; Certified for Publication 4/18/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LAWRENCE MARINO, | B337874 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 22STRO06089) |
| v. | |
| MARK ALON RAYANT, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Gary Eto, Judge.  Affirmed.

The Vora Law Firm and Nilay U. Vora for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

———————————————

Lawrence Marino, also known as Laurent Marino, obtained an 18-month civil harassment restraining order against Mark Alon Rayant in a proceeding at which Rayant was not present. Rayant later appeared, arguing he had not received notice of Marino's restraining order request and the request was without merit. The trial court terminated the restraining order.

Rayant then moved to seal the entire record of the restraining order proceedings, citing concerns the proceedings had negatively impacted background checks as he applied for jobs and subjected him to increased scrutiny by airport authorities when returning from international travel. The trial court denied the sealing request because Rayant had not made the necessary showing for sealing under the California Rules of Court.[1] Rayant appeals from that order. Marino has not filed a respondent's brief.

Rayant contends there is no federal constitutional right of public access to records of restraining order proceedings, and therefore the court rules for sealing records, which are based on federal constitutional requirements as interpreted by our Supreme Court, are inapplicable.

Although the sealing rules are based on federal constitutional principles, they provide an independent, statutory right of public access to court records. The unambiguous language of those rules creates a broad presumption of public access to all superior court records with only limited exceptions, none of which applies in the instant case. The trial court did not

---

[1] Unspecified rule citations are to the California Rules of Court.

err in finding Rayant had not met the high bar for sealing imposed by those rules.

Accordingly, we affirm.

## BACKGROUND

### 1. *Restraining orders*

On February 24, 2022, the trial court granted Rayant a three-year civil harassment restraining order against Marino, identified in the order as Laurent Marino, under Code of Civil Procedure section 527.6. At the hearing on the restraining order, Rayant testified to Marino's unwanted romantic overtures towards him. After Rayant rebuffed Marino, Marino continued to contact Rayant through text messages and e-mail. When Marino appeared at Rayant's apartment unannounced, Rayant called the police.

On September 21, 2022, Marino, identifying himself as Lawrence Marino, filed for a restraining order against Rayant under Code of Civil Procedure section 527.6. Marino claimed Rayant, inter alia, sent him harassing text messages, including "racist/islamophobic" messages, "made up stories to have my friends call me in the middle of the night," "threatened to file false police reports," and "contacted my school to get personal information about me and find my new location." Marino filed a proof of service indicating personal service on Rayant at an address on South Hill Street on September 22, 2022.

The trial court granted Marino's restraining order request on October 12, 2022, and issued an 18-month restraining order against Rayant. Rayant did not appear at the restraining order hearing. Marino filed another proof of service indicating the

3

restraining order was mailed to Rayant at the South Hill Street Address as well as to Rayant's family home in San Francisco.

## 2. *Request to terminate restraining order*

On February 6, 2023, Rayant filed a request to terminate the restraining order against him. In a supporting declaration, Rayant averred he had had no voluntary contact with Marino since 2021 and had never sought to obtain Marino's contact information. Rayant further averred he did not live at the South Hill Street address at the time Marino purportedly served him with the restraining order request, and "ha[d] never been personally served with any documents in this case." Rayant claimed he did not receive a copy of the restraining order against him until December 8, 2022 and then only at his family's home in San Francisco.

In his memorandum of points and authorities, Rayant argued Marino obtained the restraining order under false pretenses, including claiming to have served Rayant when he had not, and concealing from the court that Rayant already had a restraining order against Marino. Rayant argued there was no factual basis for a restraining order against him, and that Marino should be sanctioned for committing a fraud on the court.

At the conclusion of his memorandum, Rayant requested the court seal Marino's restraining order request and the restraining order itself. Rayant cited his "interest in preventing future employers, educational institutions, and other personal or professional contacts from having access to a fraudulently obtained restraining order . . . ."

Marino filed a memorandum and declaration in opposition in which he offered further explanation for why he sought the restraining order against Rayant, and disputed the propriety of

4

the restraining order Rayant obtained against Marino. Marino attached a declaration from the individual who purportedly served Rayant with the restraining order request, who claimed to have personally served an individual matching Marino's description of Rayant.

The parties appeared for a hearing on Rayant's motion to terminate the restraining order on March 9, 2023. At Marino's request, the court continued the hearing to April 11, 2023. Marino, however, did not appear at the continued hearing on April 11, and the court proceeded without him.

At the April 11 hearing, in response to the court's questioning, Rayant testified he had moved out of the South Hill Street address on June 30, 2022, months before Marino purportedly served him with the restraining order request on September 21, 2022, and had never been back to that location. Rayant had not had contact with Marino since Marino appeared at his apartment in February 2022. The court asked if Rayant and Marino had any mutual friends, and Rayant answered he believed all of their mutual friends had ceased contact with Marino. Rayant stated he had no reason to have contact with Marino in the future, and had been trying to avoid him.

The court then found, based on the testimony and the moving papers, that the restraining order against Rayant should be terminated in the interest of justice. The court noted that Rayant had "testified that there . . . has been no contact . . . since Mr. Marino harassed him by breaking into his home. And there is no need for this restraining order since Mr. Rayant has no desire and is, in fact, the protected person" under the earlier restraining order Rayant obtained against Marino. The court

5

declined to impose sanctions because Marino was not there to address them.

As for the request to seal, the court stated, "I will deny that at this point, Mr. Rayant. If there is a need in the future for a seal, for example, if you are going to be licensed by any licensing agency of the state or if you need clearance from an employer, the court will consider it at that point. But I have not received any information from you that there's any issue that is ripe right now for the court to seal any records at this point."

The court signed the order terminating the restraining order against Rayant on May 18, 2023, and it was filed on May 23, 2023.

### 3.     *Motion to seal*

On June 21, 2023, Rayant and Marino filed a joint stipulation pursuant to a settlement agreement to terminate Rayant's restraining order against Marino. The settlement agreement provided, inter alia, that the parties would stipulate to, and not oppose, sealing the records related to both Rayant's restraining order against Marino and Marino's now-terminated restraining order against Rayant.

On September 29, 2023, Rayant moved to seal the entire record concerning the restraining order against him. He argued his privacy interests and the parties' interest in enforcing their settlement agreement overcame the public's right of access "to Mr. Marino's fraudulent restraining order application." He contended he had been prejudiced by the restraining order, averring in a supporting declaration he had applied for a job with the Los Angeles Department of Sanitation in May 2023, a position that required a background check, and never heard back about the position. He stated he intended to apply for other jobs,

6

including with government agencies, that required background checks. He further averred that on June 21, 2023, and again on August 2, 2023, airport authorities subjected him to multiple rounds of screening and questioning when he returned from travel abroad. The authorities told him the additional screening was because of the restraining order against him. Rayant argued sealing of the "entire court record" was justified because the record "only exists because Mr. Marino filed a restraining order application based on lies."

In a footnote, Rayant requested, as an alternative to sealing the record, that the trial court strike the following documents: Marino's restraining order request "and related filings"; the temporary and permanent restraining orders granted against Rayant; the affidavit of exhibits in support of the restraining order request; Marino's response to Rayant's motion to terminate the restraining order; the declaration of Marino's process server; Marino's declaration responding to a declaration submitted in support of Rayant's motion to terminate the restraining order; and two proofs of service filed by Marino. Rayant cited the court's authority under Code of Civil Procedure section 436 to strike irrelevant, false, or improper matters from pleadings.

Marino filed a response in which he requested the court either seal the record concerning the restraining order against him as well, or not strike or seal any records at all.

The trial court held a hearing on the sealing request on December 19, 2023. The judge who presided at the hearing was not the same judge who terminated the restraining order against Rayant. Following the hearing the court took the matter under submission.

7

On February 7, 2024, the trial court issued a written ruling denying Rayant's sealing request. The court found the sealing request "untimely as it dates back to the beginning of this case which was filed on 9/21/22." The court cited case law for the proposition "that courts lack discretion to entertain a motion to seal documents not made within a reasonable time, or filed beyond the ten-day limit of . . . rule 2.551(b)(3)(B)." The court reasoned, "[T]he documents which comprise the file in this case have been available to the public over the course of the past year or longer, and it appears that any harm to privacy has already occurred." "[Rayant] seeks to avoid the documents in both cases from being disclosed due to the alleged harm he has faced when seeking employment and during international travel, [but] he fails to explain why he did not seek to seal the documents in this case within the 10-day limit of . . . [r]ule 2.551."

The court further found the sealing request was not "narrowly tailored" in that it sought "to seal the entire court file." Also, "the declarations accompanying the moving papers do not provide facts that discuss specific harm or prejudice to the parties such that sealing documents, let alone the entire file, would be appropriate. [Rayant] has produced no evidence, aside from the arguments presented in his moving papers, to support his claims that he has been prejudiced by the documents in this case." The court concluded Rayant had not "m[e]t his burden to show that his request is narrowly tailored to serve an overriding interest." The court did not expressly address Rayant's alternative request for a motion to strike.

The court also denied Marino's request to seal the record of the restraining order against him.

8

The court's order indicated Rayant filed a response to Marino's request to seal, although that response is not in the record before us. According to the court, in that response, Rayant did not oppose Marino's request, but asked that if the court denied the request, the court in the alternative should strike a number of documents from the record. These were not the same documents Rayant requested be stricken in Rayant's own sealing motion. The court denied the request to strike, finding Rayant had "fail[ed] to specify which portions of the pleadings are irrelevant, false or improper and merely makes a blanket statement as to all of these documents."

Rayant timely appealed from the denial of his sealing request.[2]

## DISCUSSION

On appeal, Rayant challenges only the denial of his motion to seal. He raises no arguments regarding his alternative motion to strike, which we therefore do not address. (*Sierra Palms Homeowners Assn. v. Metro Gold Line Foothill Extension Construction Authority* (2018) 19 Cal.App.5th 1127, 1136 [issue not raised in appellate briefing forfeited].)

### A. Governing Law

Rules 2.550 and 2.551 govern the sealing of court records. (See rule 2.550(a)(1).) These rules are based on standards set forth in *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court*

---

[2] "Orders concerning the sealing and unsealing of documents are appealable as collateral orders." (*Overstock.com, Inc. v. Goldman Sachs Group, Inc.* (2014) 231 Cal.App.4th 471, 481, fn. 2.)

9

(1999) 20 Cal.4th 1178 (*NBC Subsidiary*).  (See Advisory Com. com., rule 2.550.)  We begin with a summary of *NBC Subsidiary*.

### 1.    NBC Subsidiary

In *NBC Subsidiary*, our Supreme Court held that the First Amendment to the United States Constitution "provides a right of access to ordinary civil trials and proceedings."  (*NBC Subsidiary*, *supra*, 20 Cal.4th at p. 1212.)  In reaching this conclusion, the court relied on decisions by the United States Supreme Court establishing a First Amendment right of access to criminal proceedings.  (*Id.* at pp. 1197–1207.)  In those decisions, the United States Supreme Court identified two factors pertinent to determining whether particular proceedings are presumptively open under the First Amendment—"(i) historical tradition and (ii) the specific structural value or utility of access in the circumstances."  (*Id.* at pp. 1202–1203, citing *Globe Newspaper Co. v. Superior Court* (1982) 457 U.S. 596 (*Globe Newspaper*).)

Applying this rubric, the United States Supreme Court concluded "criminal trials historically have been open."  (*NBC Subsidiary*, *supra*, 20 Cal.4th at p. 1203, citing *Globe Newspaper*, *supra*, 457 U.S. at p. 605, fn. 13.)  As for the utility of open proceedings, our Supreme Court cited a concurring opinion by Justice Brennan identifying interests served by public access to criminal trials, including "demonstrat[ing] that justice is meted out fairly, thereby promoting public confidence in such governmental proceedings"; "provid[ing] a means . . . by which citizens scrutinize and 'check' the use and possible abuse of judicial power"; and "enhanc[ing] the truth-finding function of the proceeding."  (*NBC Subsidiary*, *supra*, at pp. 1201–1202, citing *Richmond Newspapers, Inc. v. Virginia* (1980) 448 U.S. 555, 594–597.)

Our Supreme Court concluded the United States Supreme Court's reasoning concerning public access to criminal proceedings "suggests that the First Amendment right of access . . . encompasses civil proceedings as well." (*NBC Subsidiary*, *supra*, 20 Cal.4th at p. 1207.) Our high court outlined the requirements to be met before a trial court could close the courtroom or seal transcripts in "proceedings that satisfy the [United States Supreme Court's] historical tradition/utility considerations." (*Id.* at p. 1217.) First, the court must provide notice to the public. (*Ibid.*) Second, the court "must hold a hearing and expressly find that (i) there exists an overriding interest supporting closure and/or sealing; (ii) there is a substantial probability that the interest will be prejudiced absent closure and/or sealing; (iii) the proposed closure and/or sealing is narrowly tailored to serve the overriding interest; and (iv) there is no less restrictive means of achieving the overriding interest." (*Id.* at pp. 1217–1218, fns. omitted.)

In a footnote, our Supreme Court limited the scope of its holding: "We observe that various statutes set out, for example, in the Code of Civil Procedure, Family Code, and Welfare and Institutions Code provide for closure of certain civil proceedings. We address herein the right of access to ordinary civil proceedings in general, and not any right of access to particular proceedings governed by specific statutes." (*NBC Subsidiary*, *supra*, 20 Cal.4th at p. 1212, fn. 30.)

### 2.    *Rules 2.550 and 2.551*

Rules 2.550 and 2.551 appear in title 2 of the California Rules of Court, the "Trial Court Rules." (Rule 2.1.) "The Trial Court Rules apply to all cases in the superior courts unless otherwise specified by a rule or statute." (Rule 2.2.) Rayant does

11

not dispute the Trial Court Rules apply to the trial court that presided over the instant matter.

Rules 2.550 and 2.551 "apply to records sealed or proposed to be sealed by court order." (Rule 2.550(a)(1).) " '[R]ecord' means all or a portion of any document, paper, exhibit, transcript, or other thing filed or lodged with the court, by electronic means or otherwise." (Rule 2.550(b)(1).)

"Unless confidentiality is required by law, court records are presumed to be open." (Rule 2.550(c).) To overcome that presumption and order that a record be sealed, the court must make the following express factual findings, consistent with *NBC Subsidiary*: "(1) There exists an overriding interest that overcomes the right of public access to the record; [¶] (2) The overriding interest supports sealing the record; [¶] (3) A substantial probability exists that the overriding interest will be prejudiced if the record is not sealed; [¶] (4) The proposed sealing is narrowly tailored; and [¶] (5) No less restrictive means exist to achieve the overriding interest." (Rule 2.550(d).)

Rule 2.551 sets forth the procedures for filing records under seal. A party seeking to seal a record "must file a motion or an application . . . . accompanied by a memorandum and a declaration containing facts sufficient to justify the sealing." (Rule 2.551(b)(1).) "The court must not permit a record to be filed under seal based solely on the agreement or stipulation of the parties." (Rule 2.551(a).)

Certain records are expressly exempt from rules 2.550 and 2.551. Specifically, those rules "do not apply to discovery motions and records filed or lodged in connection with discovery motions or proceedings. However, the rules do apply to discovery materials that are used at trial or submitted as a basis for

12

adjudication of matters other than discovery motions or proceedings." (Rule 2.550(a)(3).)

## B. The Sealing Rules Apply to the Records Rayant Seeks To Seal

### 1. *The sealing rules apply to civil harassment restraining order proceedings under Code of Civil Procedure section 527.6*

Rayant's primary argument is that civil harassment restraining order proceedings under Code of Civil Procedure section 527.6 are not "ordinary civil trials and proceedings" as that phrase is used in *NBC Subsidiary*, but "special proceedings that are limited in remedies and conducted pursuant to special statutory authorization."[3] He further contends restraining order proceedings do not satisfy the "historical tradition/utility considerations" test for access under the First Amendment as articulated in *NBC Subsidiary*, and thus there is no First Amendment right of public access to those proceedings. By extension, he argues, rules 2.550 and 2.551, which are based on *NBC Subsidiary*, do not apply to records of civil harassment restraining order proceedings, and the trial court erred in requiring Rayant to meet the criteria set forth in those rules.

---

[3] Code of Civil Procedure section 527.6 allows a person who has suffered "harassment" to seek a temporary restraining order and an order after hearing prohibiting harassment. (*Id.*, subd. (a)(1).) " 'Harassment' is unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." (*Id.*, subd. (b)(3).)

13

These arguments present questions of law we review de novo. (See *Mercury Interactive Corp. v. Klein* (2007) 158 Cal.App.4th 60, 81 (*Mercury*) [reviewing de novo whether sealing rules apply to particular documents].)

The central premise of Rayant's argument is that applicability of Rules 2.550 and 2.551 in a given circumstance depends on a case-by-case analysis under *NBC Subsidiary*. This premise is incorrect. Rule 2.550 defines precisely what records fall under the sealing rules, and that is "court records," meaning "all or a portion of any document, paper, exhibit, transcript, or other thing filed or lodged with the court." (Rule 2.550(b)(1), (c).) The only exceptions are records "that are required to be kept confidential by law," and discovery motions and related materials unless the discovery materials "are used at trial or submitted as a basis for adjudication of matters other than discovery motions or proceedings."[4] (Rule 2.550(a)(2), (3).)

The language of rule 2.550 is unambiguous: *all* superior court records are presumptively open and subject to the sealing rules, regardless of the particular court proceeding to which those records apply, unless the records fall within the confidentiality or discovery exceptions under subdivisions (a)(2) and (3) of that rule, or a statute or rule exempts the court from the sealing rules. Nothing in the rule requires a case-by-case analysis of whether the records arise in an "ordinary" court proceeding under *NBC Subsidiary*. " 'Rules of court have the force of law and are as

---

[4] As we discuss *post*, case law has interpreted the discovery materials exception to include discovery materials attached to pleadings, so long as the materials are not introduced at trial or submitted as a basis for adjudication. (See *Mercury*, *supra*, 158 Cal.App.4th at p. 100.)

14

binding as procedural statutes as long as they are not inconsistent with statutory or constitutional law.  [Citation.]' [Citation.]"  (*Marshall v. Webster* (2020) 54 Cal.App.5th 275, 279, fn. 3.)  Rayant makes no argument rule 2.550 conflicts with statutory or constitutional law, or that a statute or rule exempts the trial court that presided over the instant matter from the rule.  He therefore offers no basis to deviate from rule 2.550 in this case.

Rayant cites *Sorenson v. Superior Court* (2013) 219 Cal.App.4th 409 (*Sorenson*) as an example of a court conducting a case-specific analysis under *NBC Subsidiary* to conclude a proceeding was not presumptively open.  That case, however, is consistent with our reasoning.  *Sorenson* addressed the public right of access to transcripts of involuntary civil commitment trials under the Lanterman-Petris-Short Act (Welf. & Inst. Code, § 5000 et seq.; LPS Act).  (*Sorenson*, *supra*, at p. 416.)  The Court of Appeal first concluded an LPS trial "is a 'special proceeding' that is a creature of statute, rather than an 'ordinary civil proceeding[ ]' " under *NBC Subsidiary*.  (*Sorenson*, at pp. 430–431.)  Applying *NBC Subsidiary*'s " 'historical tradition/utility considerations' " test, the court further concluded "there is no constitutional right of public access to LPS proceedings, including trials."  (*Sorenson*, at p. 436.)

The *Sorenson* court acknowledged that its inquiry did not end with the constitutional question, because the public also has a *statutory* right of access under Code of Civil Procedure section 124, " 'California's long-standing "open-court" statute'

15

[citation]."[5] (*Sorenson, supra*, 219 Cal.App.4th at p. 437.) The court concluded, however, that the language of Welfare and Institutions Code section 5118, which at that time provided that "any party to the [LPS] proceeding may demand that the hearing be public," must be read to mean that LPS trials were presumptively *non*public, and was therefore a statutory exception to Code of Civil Procedure section 124. (*Sorenson, supra*, at pp. 416, 438.)

*Sorenson* illustrates there are two bases for a presumption of public access to court proceedings: a constitutional basis under *NBC Subsidiary*'s tradition/utility test, and a statutory basis, which in *Sorenson* was Code of Civil Procedure section 124, and in this case is rule 2.550(c). This means if a particular proceeding is *not* exempt from the statutory presumption of public access, there is no need to engage in the constitutional tradition/utility test. Put another way, if a statute requires a particular proceeding to be open, it is immaterial that the First Amendment arguably does not so require, because "states are free to enact greater protections than those required by the federal Constitution." (*People v. Perry* (2019) 36 Cal.App.5th 444, 466; see *ibid.* ["The United States Constitution provides the floor, rather than the ceiling, for the protection of individual liberties."].)

Our conclusion is consistent with the other public access cases cited in Rayant's briefing. Those cases concern *statutory* exemptions from public-access statutes, and apply *NBC*

---

[5] Code of Civil Procedure section 124 states, "Except as provided in Section 214 of the Family Code or any other law, the sittings of every court shall be public." (Code Civ. Proc., § 124, subd. (a).)

16

*Subsidiary* and/or the tradition/utility test to assess whether those exemptions survive First Amendment scrutiny. (*Mercury, supra*, 158 Cal.App.4th at pp. 100–101 & fn. 31 [concluding, based on Advisory Committee comment, the exemption under rule 2.550(a)(3) extends to discovery materials attached to complaints, and the exemption is consistent with *NBC Subsidiary*]; *In re Marriage of Burkle* (2006) 135 Cal.App.4th 1045, 1048, 1055–1056 (*Burkle*) [applying tradition/utility test to invalidate statute requiring sealing of certain records in divorce proceedings at party's request]; *San Bernardino County Dept. of Public Social Services v. Superior Court* (1991) 232 Cal.App.3d 188, 203, 205 (*San Bernardino County*) [applying "historical experience"/"societal values of openness" test to conclude Legislature constitutionally may limit access to juvenile court proceedings under Welf. & Inst. Code, § 346].)[6] None of these cases holds or suggests courts should apply the tradition/utility test in the absence of an exemption to statutory public access.

Rayant's argument, therefore, that civil harassment restraining order proceedings are not "ordinary civil proceedings" under the tradition/utility test, is beside the point unless he can demonstrate records of those proceedings also are exempt from the statutory presumption of openness under rule 2.550(c)—that is, that the records "are required to be kept confidential by law," or are discovery motions or discovery materials not used at trial or as a basis for adjudication. (*Id.*, subd. (a)(2), (3).) As we

---

[6] *San Bernardino County* predated *NBC Subsidiary*, but similarly relied on United States Supreme Court decisions to derive the constitutional test for public access, including the history/utility analysis. (*San Bernardino County, supra*, 232 Cal.App.3d at pp. 195–197.)

17

discuss next, he does not establish either of these exceptions apply.

### 2. *Rayant does not contend the records he seeks to seal are confidential by law*

Rayant does not contend civil harassment restraining order records are required by law to be kept confidential. Rather, he argues Code of Civil Procedure section 527.6, subdivision (v), which allows courts to keep confidential certain information concerning minors involved in civil harassment restraining order proceedings, suggests "there is no presumption of public right of access" to restraining order proceedings.

In fact, even when minors' privacy is at issue, Code of Civil Procedure section 527.6, subdivision (v) requires findings mirroring those in rule 2.550(d) and *NBC Subsidiary* before a court may order information concerning minors be kept confidential.[7] In any event, Rayant does not contend any minors were involved in his restraining order proceedings, nor does he identify any other subdivision or statutory section extending those confidentiality provisions to adults. He identifies no other law rendering restraining order proceedings confidential. He

---

[7] Those findings are: "(A) The minor's right to privacy overcomes the right of public access to the information. [¶] (B) There is a substantial probability that the minor's interest will be prejudiced if the information is not kept confidential. [¶] (C) The order to keep the information confidential is narrowly tailored. [¶] (D) No less restrictive means exist to protect the minor's privacy." (Code Civ. Proc., § 527.6, subd. (v)(2).)

18

therefore fails to show the records he seeks to seal "are required to be kept confidential by law."  (Rule 2.550(a)(2).)

### 3.    *Rayant does not demonstrate the exception for discovery materials applies*

To recap, rules 2.550 and 2.551 "do not apply to discovery motions and records filed or lodged in connection with discovery motions or proceedings.  However, the rules do apply to discovery materials that are used at trial or submitted as a basis for adjudication of matters other than discovery motions or proceedings."  (Rule 2.550(a)(3).)

Rayant does not contend he is seeking to seal "discovery motions and records filed or lodged in connection with discovery motions or proceedings."  (Rule 2.550(a)(3).)  He nonetheless argues the records he seeks to seal fall within that exception because those records were "not the basis for adjudication."

Plaintiff relies on *Mercury*, in which the plaintiffs in a shareholder derivative suit filed a complaint under seal that attached 17 exhibits produced in discovery pursuant to a stipulated protective order.  (*Mercury*, *supra*, 158 Cal.App.4th at pp. 68–69.)  Representatives of the media moved to unseal the complaint and exhibits, and the trial court granted the motion.  (*Id.* at p. 69.)  Shortly thereafter, the trial court dismissed the complaint upon concluding the plaintiffs lacked standing to bring a derivative suit.  (*Ibid.*)

The Court of Appeal reversed the order unsealing the exhibits.  (*Mercury*, *supra*, 158 Cal.App.4th at p. 108.)  The court observed the exhibits fell into a gray area in rule 2.550(a)(3), because while they were not filed in connection with discovery motions or proceedings, neither were they used at trial or submitted as a basis for adjudication.  (*Mercury*, *supra*, at p. 100.)

19

The court noted that "pleadings, including complaints, are not typically evidentiary matters that are submitted to a jury in adjudicating a controversy." (*Id.* at p. 103.)  The court further noted the demurrer that led to dismissal of the complaint was based on standing, an issue to which the exhibits did not pertain, and thus the exhibits "were not submitted as a basis for adjudication in connection with the court's disposition of defendants' demurrer." (*Id.* at pp. 103–104.)

After reviewing *NBC Subsidiary* and the comments of the Advisory Committee to rule 2.550, the court concluded the crux of the exception under rule 2.550(a)(3) is not that the discovery materials are attached to a discovery motion, but that the discovery materials are not used at trial or submitted as a basis for adjudication.  (*Mercury*, *supra*, 158 Cal.App.4th at pp. 100–101.)  In particular, the court relied on the Advisory Committee comment that " '[t]he sealed records rules . . . do not apply to discovery proceedings, motions, and materials that are not used at trial or submitted to the court as a basis for adjudication,' " a different articulation of the rule 2.550(a)(3) exception that the court found reflected "the intent of the Judicial Council" when promulgating the rule.  (*Ibid.*)  The court concluded the exhibits at issue therefore were exempt from the sealed record rules despite being attached to a complaint as opposed to a discovery motion.  (*Id.* at p. 105.)

Rayant argues *Mercury* is analogous to the instant circumstances because the records he seeks to seal were not "part of any basis for the court's adjudication of *any legal issue*."  He contends there was a procedural bar to Marino filing his restraining order request in the first place, because Rayant had already obtained a restraining order against him, and Marino

20

"was barred from now . . . belatedly seeking a restraining order against Rayant when those facts had already been adjudicated through doctrines of preclusion." Rayant argues, "[D]ismissal on the basis of preclusion is a procedural bar that operates in virtually identical ways to dismissal for lack of standing," the basis of the demurrer in *Mercury*. In other words, Rayant construes the order terminating the restraining order to constitute, in essence, a finding that Marino's restraining order request was precluded from the outset, and therefore no records related to that precluded request should be deemed submitted to the court as a basis for adjudication.

We reject this argument. Although *Mercury* expanded the exception under rule 2.550(a)(3) to include discovery materials attached to complaints as well as discovery motions, it nonetheless limited its holding to discovery materials, the subject of the Advisory Committee comment on which *Mercury* relied. (See *Mercury*, *supra*, 158 Cal.App.4th at p. 104 ["Our holding is not meant to encourage the filing of complaints or other pleadings under seal, nor is it intended to suggest that pleadings should not, as a general rule, be open to public inspection."].) Rayant's motion to seal is far broader than discovery materials attached to pleadings—it encompasses the pleadings themselves, as well as court orders, including the restraining order against him and the order lifting the restraining order. None of these can reasonably be construed as discovery materials within the language of rule 2.550(a)(3), even as interpreted in *Mercury*.

Assuming arguendo *Mercury* can be read to include documents other than discovery materials so long as they are not used as a basis for adjudication, Rayant's argument still fails. Marino clearly submitted his restraining order request and

21

accompanying materials as a basis for adjudication—he was seeking a protective order from the court. That his request arguably was procedurally improper, an issue on which we express no opinion, does not change the fact that he sought adjudication of that request and submitted materials for that purpose.

In sum, Rayant has failed to show the records he seeks to seal are exempt from the requirements of rules 2.550 and 2.551.

## C.     The Trial Court Did Not Err In Denying the Sealing Request

Having concluded rules 2.550 and 2.551 apply to the records Rayant seeks to seal, the next question is whether the trial court erred in finding Rayant had not met his burden under those rules. In reviewing the denial of an order to seal, we review the trial court's factual findings for substantial evidence, and "review de novo questions of law raised by the trial court's order." (*In re M.T.* (2024) 106 Cal.App.5th 322, 336.)

We repeat the showing necessary to seal documents under rule 2.550: "(1) There exists an overriding interest that overcomes the right of public access to the record; [¶] (2) The overriding interest supports sealing the record; [¶] (3) A substantial probability exists that the overriding interest will be prejudiced if the record is not sealed; [¶] (4) The proposed sealing is narrowly tailored; and [¶] (5) No less restrictive means exist to achieve the overriding interest." (Rule 2.550(d).)

According to Rayant, he seeks to seal the record of the restraining order proceedings out of concern that future potential employers will conduct background checks and discover "publicly available records that would contain falsehoods about Rayant's character." He argues, "This harm can *only* be addressed through

22

a sealing of records, which would permit Rayant to no longer have a fear that a potential public employer would find court records that contain false information about him and then decline to provide him with an opportunity to explain the situation based upon the contents of the public filings."  Rayant also cites the harm of continued enhanced screenings by airport authorities.

Substantial evidence supports the trial court's conclusion that Rayant did not meet his burden under rule 2.550.[8]

Assuming arguendo Rayant has demonstrated an overriding interest in his reputation and future job prospects, a question on which we express no opinion, he has not shown "[a] substantial probability" that interest "will be prejudiced if the record is not sealed."  (Rule 2.550(d)(3).)  "Substantial probability" is a higher standard than "reasonable likelihood," the latter of which "has been construed to mean something less than ' " 'more probable than not' " ' yet greater than something that is ' "[m]erely 'possible.' " ' [Citation.]" (*Alvarez v. Superior Court* (2007) 154 Cal.App.4th 642, 653 & fn. 4.)[9]

Accepting that having an active restraining order on one's record could negatively impact a background check, the trial court already has mitigated that prejudice by terminating the restraining order.  Rayant does not argue the terminated

---

[8] The trial court also found Rayant's motion to seal untimely, a conclusion Rayant disputes.  It is not necessary for us to reach this issue given our conclusion, on the merits, that substantial evidence supports the denial of the motion.

[9] We have found no cases, and Rayant has not cited any, articulating the "substantial probability" standard in the public access context other than to state it is more rigorous than a "reasonable likelihood."

restraining order will prejudice him—rather, he argues he could be prejudiced by Marino's unfounded accusations against him, which an employer might discover during a background check and "decline to provide [Rayant] with an opportunity to explain."

Although we recognize a prejudice assessment in the context of a sealing motion " 'by its nature calls for speculation' " (*Jackson*, *supra*, 128 Cal.App.4th at p. 1025), Rayant offers no evidence demonstrating a "substantial probability" that an employer would disqualify him based on the allegations in Marino's restraining order request, despite the subsequent termination of the restraining order. Rayant's declaration stating he never heard back about a government job for which he applied falls short of establishing prejudice from the restraining order proceedings, when there could be other reasons unrelated to the restraining order for why Rayant did not get the job. The lack of an evidentiary showing from Rayant supports the trial court's finding Rayant did not meet his burden to show prejudice.

As for Rayant's evidence of additional screening at the airport, he offers no argument other than criticizing the trial court for "g[iving] no weight to Rayant's fears of harm" in "dealings with US immigration authorities." He does not argue, nor can we conclude, the interest in avoiding additional airport screening overrides the public's right of access to court records. Further, Rayant offers no evidence that airport authorities would discontinue the alleged enhanced screening if the record were sealed.

At oral argument, Rayant's counsel represented that after briefing was complete in this appeal, Rayant was turned down for several other positions requiring background checks. We express no opinion whether, as a procedural matter, Rayant can file a

24

new motion to seal or strike based on that new evidence, nor do we express an opinion how the trial court should rule on such a motion.

## DISPOSITION

The order denying the motion to seal is affirmed.  The parties shall bear their own costs on appeal.


BENDIX, J.


We concur:



ROTHSCHILD, P. J.



WEINGART, J.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LAWRENCE MARINO, | B337874 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 22STRO06089) |
| v. | |
| MARK ALON RAYANT, | CERTIFICATION AND ORDER FOR PUBLICATION |
| Defendant and Appellant. | [NO CHANGE IN JUDGMENT] |

The opinion in the above-entitled matter filed March 24, 2025, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

There is no change in the judgment.

CERTIFIED FOR PUBLICATION.

_____

ROTHSCHILD, P. J.          BENDIX, J.          WEINGART, J.